5 WS 535
f 33 SC 362

# Kelly Township *against* Union Township.

The overseers of a township are bound to maintain every poor person within their district, not having a settlement therein, who shall apply to them for relief, until he can be removed to the place of his last settlement; and if in an attempt to remove him to the place of his last settlement, they leave him on the way in a township not legally chargeable with him, he may be returned to them by an order of removal.

*CERTIORARI* to the Quarter Sessions of *Union* county.

Samuel Little, a poor person, applied to the overseers of the poor of Kelly township for relief.   They afterwards obtained an order for his removal to the township of Clarion, in the county of Clarion, where he had his last legal settlement.   The pauper was so infirm, that the agent employed was obliged to leave him on the way, having first sent for his son, who took charge of him, but not being able to maintain him, he found his way into the township of Union.   The overseers of the latter township, upon whom he became chargeable, obtained an order for his removal to the township of Kelly; from which order of removal the overseers of Kelly township applied to the Quarter Sessions.

The court below, (WILSON, President), was of opinion, that the township of Kelly was bound to maintain the pauper, until the

[Kelly Township v. Union Township.]

overseers of that township discharged their duty, by removing him to the place of his last legal settlement, and therefore affirmed the order.

*Miller*, for plaintiff in error, argued that Kelly township was not legally chargeable with the pauper, for it was not the place of his last settlement; and as the son was bound by law to maintain his father, and acting upon that obligation, took him into his keeping, the appellants were clearly discharged from all liability, and the township of Union was bound to send him to the place of his last settlement. Act of 13th June 1836, sect. 16 : 1 *Ld. Raym.* 41 ; 2 *Har. Dig.* 1723 ; 3 *Burns' Jus.* 569.

*Slenker*, contra. The overseers of Kelly township, in the discharge of their duty, should have removed the pauper to the place of his last settlement ; and until they did so, he had a *quasi* settlement in their township ; and their leaving him in another township was a fraud upon it, which can only be avoided by returning him to them, to enable them to do what they should have done at first, — maintain him until he was fit to be removed, and then remove him to the place of his last settlement. 2 *Har. Dig.* 1724 ; 5 *Binn.* 81 ; 2 *Watts* 44.

The opinion of the Court was delivered by

Gibson, C. J.—The fifth section of the Act of 1836, makes it " the duty of the overseers of every district to furnish relief to every poor person within the district, not having a settlement therein, who shall apply to them for relief, *until* such person can be removed to the place of his last settlement." Did the overseers of Kelly do their duty by this pauper as the statute pointed it out to them? In subjecting him to the torture of an attempt to remove him at the risk of his life, they committed an act of cruelty for which they might have been indicted. The statute permits not, much less commands the transportation of a human being in such a state of suffering. They were not at liberty to remove him, for the state of his health forbade it ; and they were consequently bound to bear the expense of his maintenance in the first instance. Their first step, therefore, was an error ; and they did not retrieve it in leaving the pauper by the way-side to the humanity of his son. The son may have been liable to maintain him ; but not at the instance of the overseers of Kelly. They were directed to remove him to the place of his last settlement, if it could be done with a due regard to the state of his health, and charge the township ultimately liable. That township alone, therefore, could call on the son in the words of the statute, by an order of the Quarter Sessions in the county of the pauper's residence. The voluntary performance of a duty may be attended with the legal consequences of performance on compulsion ; and

[Kelly Township v. Union Township.]

the son's voluntary receipt of the pauper from the township officers at the place of his last settlement, would, doubtless, have discharged them of him; but the township officers of Kelly had nothing to do with the son, and the delivery of the pauper to him cannot be looked on as the final accomplishment of their duty. The statute made it their business to remove him to the place of his last settlement, or maintain him in the first instance; not to deliver him to the keeping of any charitable person who should offer to take him, whether son or stranger.  We neither say, nor believe, that there was an actual design to drop the pauper in another township in order to get rid of him; still the claim to exemption from the further maintenance of him, rests on the unintentional consequences of such an act.  Notwithstanding the abandonment of the pauper, then, he remained chargeable, as before, to Kelly township, which was fixed by his application for relief, and must remain so till all things written in the statute be fulfilled.  And all the things there written are just and wholesome; for if the burthen of a pauper could be shaken off by an effort, such as was made in this instance, the consequent temptation to acts of inhumanity would be too strong for resistance. The order to remove the pauper from Union township back to Kelly, as the place of his last settlement, was substantially right, for he had a *quasi* settlement in the latter while he remained chargeable to it, and we are not disposed to criticise the form of the order, the matter contained in it being entirely proper.

Order of the Quarter Sessions affirmed.