# The Directors of the House of Employment of Westmoreland County *versus* Murry.

A physician may maintain *indebitatus assumpsit*, on a *quantum meruit*, against the directors of the poor, for medical services rendered to a pauper, in case of emergency, without a previous order of relief; provided, such order be subsequently obtained.

The implied *assumpsit* arises, in such case, from the legal obligation or duty.

The duties and obligations of overseers of the poor, under the general law, have been transferred, by the special acts relating to Westmoreland county, to the Directors of the House of Employment of that county.

ERROR to the Common Pleas of *Westmoreland county.*

This case was originally brought before a justice of the peace by Dr. Thomas Murry against the Directors of the House of Employment of Westmoreland county, for medical attendance to three alleged paupers, Farrel, Frew, and Sullivan, without a previous order of relief. The case came into the court below by appeal.

It appeared by the evidence, that at the time the alleged services were rendered, the paupers were too ill to be removed, having been injured by accident; and that the emergencies of the cases required medical assistance before an order of relief could be

obtained. Orders of relief were subsequently obtained in all three cases.

The defendants presented the following points, upon which they requested the court to instruct the jury:—

1. That by the provisions of the Act of 1852, when the constable provides relief for a pauper, and returns the facts in writing to the directors of the poor, they are then liable to him for the same, and to him only, and not to the person furnishing him the items of such relief.

2. That the plaintiff is not entitled to recover here for services rendered to Farrell and Sullivan, inasmuch as he has not shown, either that he furnished his claim and the facts to constables Lemmon and Carnahan, or that they returned the same to the directors of the poor, in writing, which was necessary to be done in order to charge the directors.

The court below (BUFFINGTON, P. J.) declined so to charge, and instructed the jury as follows:—

" In all civilized and Christian countries, where the instincts of humanity and the charitable influence of the Christian religion prevail, the unfortunate and the helpless poor are to be supported at the public expense. Fixed laws for that purpose are established. They are not to be left to the cold and unremunerated charity of those who happen to be present and surround them, when calamity and want befall them. They are not to suffer, and languish, and want, and die, and perish without necessary raiment, and food, and medicine, and Christian burial, except by the charity of the few who happen to witness their anguish and suffering; but there is a duty devolved upon the public to maintain them, and alleviate their misfortunes, or to compensate those who come forward in the hour of need and perform these duties. This obligation rests upon the state, and she, by her legislature, may either perform it herself or limit the responsibility to counties or townships, cities and boroughs.

" In fixing this liability, to prevent frauds and impositions, she may, and usually does, prescribe certain forms of proceeding. If otherwise, unworthy persons might, and doubtless would, be the recipients of public charity.

" In this county, the legislature has imposed that duty upon the entire people of the county, and the county is legally liable for the maintenance and support of the poor.

" In ordinary cases, where the paupers have become such, by slow and gradual means, and when no sudden calamity has overtaken them, it is necessary to procure an adjudication of two justices of the peace that they are subjects of charity, and an order upon the officers having charge of the poor to maintain them.

" But when the exigencies of the case are such as will not admit

[Directors of House of Employment *v.* Murry.]

of that delay, without manifest danger to the safety or life of the pauper, it is not only the duty, but every principle and instinct of humanity demands of those who happen to be present, to administer immediate relief, and for the expenses thus incurred the county becomes legally responsible. If the patient survives, an order ought to be obtained at the earliest convenient moment; but if before that time the patient dies, such order would be needless, so far as regards the liability of the county.

"In the present case, so far as regards James Frew, who got his hand shattered by the bursting of a gun, there is no dispute as to the liability of the defendants, and the only thing for the jury to determine is the amount the plaintiff is entitled to recover. You will decide this from the evidence you have heard.

"As to the case of Farrell, the evidence shows that his skull was broken by the fall of a stone in the tunnel, and was so badly injured that his brains oozed out through the wound, and, after languishing a few days, he died. Whether the plaintiff, Dr. Murry, is entitled to recover for the services thus rendered, is a question for the jury. If you believe that Farrell was poor, and unable to pay for the services rendered to him by the plaintiff, and that the calamity that happened to him was so sudden, and the necessity for immediate relief so pressing and urgent, that it would be unsafe to await the slow process of an adjudication of two justices, before the performance of the services, then we think the county would be liable for services thus performed, even although no order was procured at the time.

"The same rule and directions will apply to the case of Sullivan, who got his leg broken and was unable to be removed to the poorhouse, if the jury so believe.

"What services the plaintiff performed in these cases, and the amount which he is entitled to receive for these services, if you believe the plaintiff is entitled to recover under the principles we have laid down, are questions for the jury, and you will decide it from the evidence.

"We are requested to instruct you and decide, that the plaintiff under the evidence in this case is not entitled to recover, because the constable alone *is liable to the persons* who render services to paupers meeting with sudden calamities. And that the directors of the poor are only liable to pay and indemnify the constable. We are of a different opinion. The constable acts as a public officer, as a coroner does upon an inquisition upon a dead body when he calls in the services of a physician. He has no right to receive the moneys nor the services of a physician, as others attending upon the pauper. And in acting thus in his official character, he merely discharges a public duty, and incurs no pecuniary liability.

"We are further requested to instruct you, that the plaintiff

[Directors of House of Employment v. Murry.]

cannot recover, inasmuch as he furnished no bill for his services, and made no demand of the defendants. When a debt or legal liability has been incurred, it is the duty of the party upon whom such liability rests to seek the creditor and make payment; not of the creditor to go to the debtor and seek payment. This is the general rule, and this case is not an exception. But in the present case, if the position assumed by the defendants' counsel was even correct, it would not avail him under the pleadings in this case. The defendants, instead of resting this case upon that position, have denied their liability altogether by their plea of *non assumpsit*.

" The jury will take the case into due consideration, and give such compensation as they may believe right, with interest from the time the debt was incurred by defendants."

To this charge the defendants excepted; and a verdict and judgment having been rendered for the plaintiff, for $74.88, the defendants removed the cause to this court, and here assigned the same for error.

*Cowan*, for the plaintiffs in error.

*Laird*, for the defendant in error, cited Roxborough v. Bunn, 12 *S. & R.* 292; Milton v. Williamsport, 9 *Barr* 47; Kelly v. Union Township, 5 *W. & S.* 535; Walker v. Buffalo, 1 *Jones* 95; Directors of the Poor v. Wallace, 8 *W. & S.* 94; South Huntingdon v. East Huntingdon, 7 *Watts* 527; Act 5th April 1849, *P. L.* 353; Act 19th February 1850, *P. L.* 98; Act 7th April 1852, *P. L.* 275.

The opinion of the court was delivered by

CHURCH, J.—This action was *assumpsit* brought by the defendant in error, against the plaintiffs in error, to recover compensation for his professional services, as physician and surgeon, rendered to three several paupers. With regard to one of these, however, we understand there was an express contract and promise to pay, and hence in reference to that no question arises here. But the claim for the others is resisted on the ground of insufficient privity between these parties in respect to the transaction; that, under the circumstances, the constable is only, or primarily, liable to the party rendering the services, and that no bill or claim had been furnished to the respective constables, nor any by them returned *in writing* to the directors; and no bill furnished, nor special demand of payment made of any one, before suit brought. The evidence shows that the services rendered were very necessary, and upon such sudden emergencies, that the most prompt attention of an experienced and skilful surgeon was required. It would indeed have been extreme inhumanity to have delayed it for the slow and

[Directors of House of Employment *v.* Murry.]

formal process of the strict letter of the statute. Yet regular orders of maintenance seem to have been obtained with reasonable despatch.

In the examination of the questions presented to this court, it will be necessary, first, to consider what the law upon the subject was, previous to the passing of the act, by which the plaintiffs in error claim existence and organization.

By the general law relating to the support of the poor, it was the duty of the overseers to provide for every poor person within their respective districts; and especially, when from *disease, infirmity, or other* disability, such persons are unable to work. And this is required independent and irrespective of the place of settlement, until they can be removed; and in case of emergency, independent and irrespective of any previous order for that purpose: Act of 13th June 1836, §§ 1, 4, 5, 23, *Bright. Purd.* 659, 660; Overseers *v.* Bunn, 12 *S. & R.* 292; Overseers of Versailles *v.* Overseers of Mifflin, 10 *Watts* 360; Overseers *v.* McCoy, 2 *Penn. R.* 435; Kelly Township *v.* Union, 5 *W. & S.* 535. In the latter case, it is said that an indictment will lie for an improper attempt to remove a disabled pauper; but the township where the disability overtakes him must bear the expense in the first instance, and afterwards recover it from the township where the true settlement is; for the voluntary performance of a duty may be attended with the legal consequences of performance by compulsion. If the burden of maintenance could be shaken off by an effort like this, the consequent temptation to acts of inhumanity would be too strong for resistance: *Id.* 537. And in the case of the Directors of the Poor *v.* Wallace, 8 *W. & S.* 94, under a law similar to the one now under consideration, and also in an action of *assumpsit* to recover the price of a coffin, furnished to bury a pauper, before any formal order of maintenance, the Common Pleas, in charging the jury, observe, p. 95, that notwithstanding there was no express provision for such a case in the Act of Assembly, yet the spirit of the law, taken as a part of a system, was in accordance with the principles of humanity, which required the directors to make provision for the cases of emergency. And in sustaining the recovery, HUSTON, J., p. 96, delivering the opinion of this court, suggests, that the obligation created by law renders the directors liable in *assumpsit.* The pauper is not to lie and suffer, and perhaps die, in consequence of want of prompt relief, upon what might be denominated the etiquette of the law; first, notice to the justices, next their meeting and consultation, and finally the issue of the order for the required relief. It is the necessary care of an actual pauper that forms the consideration, while the promise to pay for it is implied from the legal duty imposed. In Overseers *v.* Bunn, the liability is indicated to be one that can be enforced as a contract, express or implied. And in

Overseers of S. Huntingdon *v.* Overseers of E. Huntingdon, 7 *Watts* 527, it was held that where any poor person falls sick suddenly, and dies, and an order for relief afterwards obtained, but without notice to the district ultimately liable, the district affording the relief can enforce reimbursement from the former. So in Bradford *v.* Keating, 3 *Casey* 275, an action on an implied *assumpsit* was sustained for maintenance afforded for a period of nearly two months previous to the order of removal or notice. These, and many other analogous cases that might be cited, are all predicated upon the same docrine of implied *assumpsit,* arising from the legal obligation or duty.

We will next inquire whether the Acts of Assembly, relative to the directors, the plaintiffs in error, have relieved them from any liabilities. It is scarcely supposable that the people of Westmoreland county, in asking for this special law, or the legislature in granting it, intended any indulgence or exemption in or from the discharge of moral and social duties. The Act of 1849, *Pamph. Laws* 354, is the first on the subject, and declares, especially in the third section, that the directors " *shall provide all things necessary for the lodging, maintenance, and employment of the poor.*" This language is full as comprehensive as that of the general law. In the eighth section the directors are prohibited from establishing any rules and regulations conflicting with the legislative enactments; and the seventeenth section limits the repeal of former laws to such only as are by this act altered or supplied. The general intent and purpose of the previous laws are in no particular altered or supplied, but very carefully preserved. It was only the machinery for carrying the same object into effect, that was even attempted to be changed. The duties of the overseers of the poor, under the general law, were merely transferred to these directors. In the third section of the supplement of 1852, *Pamph. Laws* 276, they are prohibited from paying funeral expenses or other charges on any order for relief, obtained after the death of any pauper, if there were previous thereto five or more days wherein it could have been obtained. By a familiar rule of construction, the implication would seem to be, that such expenses and charges, under *all other* circumstances, are to be paid, and to be paid, too, by *them,* and not at any time by a constable or other officer, although the pauper may not have been removed to the house of employment, nor even entered upon the poor-books, as directed by the law in ordinary cases. But it is contended by the plaintiffs in error, that the second section of this same supplement makes the constable the paymaster, and exclusively responsible in the first instance. This, however, cannot be the true rendering of this section. Such a construction of it would be a torture of language and perversion of the law from its true intent and meaning, and inconsistent with the entire policy of the

[Directors of House of Employment *v.* Murry.]

system. It would be more complicated, inconvenient, and embarrassing than the old system of township overseers. Under this section it is simply the duty of the constable to see that the humane purposes of the law are executed in these cases of emergency. In this he acts merely as the agent of the directors, contracting for them and on their credit. There is not a word used indicating that he shall pay. The law provides him with no funds. He is to furnish no vouchers nor settle any accounts, but he is *to notify the directors of the facts of the case, as soon as convenient, whose duty it is to provide for the payment.* A specific fee of fifty cents is given the constable for his services as such agent, and the usual mileage. This is all he receives and all he is to do. In case of neglect, he is subject to indictment and a limited fine. The whole of these provisions are merely directory. His performance creates no liability, on the part of the directors, towards the relief afforded the unfortunate pauper, nor does his neglect exonerate them from any: there is no intimation of the sort anywhere in the law. The liability results from the necessary services rendered in the emergency. The spirit of the law is to afford ready relief for the poor. This is the main object of it. The protection of the treasury is but a secondary one. Hence, even if the construction we give the law were a doubtful one, it ought to be maintained. The necessary services then having been rendered, under the emergency, and the order for relief obtained within the time limited, as appears to have been the case here, the law implies all the rest necessary to sustain the action. It then has about it all the legal essentials of other indebtedness, and is certainly equally meritorious. The general principle requires the debtor to seek out the creditor and make payment. Neglect to do this subjects the former to an action. We see nothing here requiring the application of any different principle. The evidence, however, shows that the plaintiff below caused his claim or bill to be presented for payment to the directors before suit brought. The objections to payment, then made, were very different from those urged now. This recovery is essentially upon a *quantum meruit*, under the sole plea of *non assumpsit.* Upon any aspect of the case, both upon principle and authority, we think the court below committed no error.

Judgment affirmed.