**TEMPLE UNIVERSITY—OF THE COM-
MONWEALTH SYSTEM OF HIGH-
ER EDUCATION, Appellant,**

v.

**CITY OF PHILADELPHIA.**

Commonwealth Court of Pennsylvania.

Argued Feb. 7, 1997.

Decided[1] July 14, 1997.

Matthew M. Strickler, Philadelphia, for appellant.

Michael F. Eichert, Philadelphia, for appellee.

Before COLINS, President Judge,
DOYLE, J. (P.), and LORD, Senior Judge.

DOYLE, Judge.

Temple University (Temple) appeals from the judgment entered following an order by the Court of Common Pleas of Philadelphia County which denied equitable and declaratory relief to Temple.

The record reveals that Temple brought this action for declaratory and injunctive relief against the City of Philadelphia (City), in which it sought a declaration that the City was responsible for the cost of emergency medical treatment which it renders to indigent city residents at Temple University's hospital. The suit was heard before the Court of Common Pleas on August 29, 1995. The Chancellor issued a verdict/finding in favor of the City on November 16, 1995,

1. The opinion and order of this Court entered on April 15, 1997 was withdrawn on June 4, 1997, at which time this Court also granted Temple's motion for reconsideration.

which was entered on the docket on December 6, 1995.

Before addressing the substantive issue on appeal, we must first discuss the motion that the City has filed in this Court to quash the appeal as untimely under Pa. R.A.P. 903(a).[2] The City's motion and Temple's response have detailed the following unique procedural history of this case.

The record reveals that, in issuing its verdict/finding, the Common Pleas Court did not comply with Pa. R.C.P. No. 1517(a), which governs adjudications in equity actions. Rule 1517(a) states the following:

> (a) The court shall make an adjudication and may do so before the testimony has been transcribed. The adjudication shall consist of (1) a statement of the issues; (2) a closely condensed chronological statement, in narrative form or in separate findings, of all the facts which are necessary to be known in order to determine the issues; (3) a discussion of the questions of law involved and the court's conclusions of law and (4) a decree nisi.

Pa. R.C.P. No. 1517(a). The court completely disregarded this rule and, instead, issued only a verdict sheet indicating "VERD/FIND FOR DEFENDANTS" and that the case had been "TRIED TO VERDICT."

The Chancellor's verdict was then entered on the docket on December 6, 1995. Temple did not file post-trial motions within ten days, as required by Pa. R.C.P. No. 227.1(c)(2), which states the following, in pertinent part:

> (c) Post-trial motions shall be filed within ten days after
>
> . . . .
>
> (2) notice of nonsuit or the filing of the decision or adjudication in the case of a trial without jury or equity trial.

Temple also did not file a Notice of Appeal with this Court within thirty days of December 6, 1995, the date that the "verdict/order" was entered on the Philadelphia docket. Rather, Temple filed a "Motion *Nunc Pro Tunc* of Plaintiff Temple University—of the Commonwealth System of Higher Education **for Post–Trial Relief**" on February 9, 1996. In its *nunc pro tunc* motion, Temple did not discuss why it.failed to file timely post-trial motions. Instead, Temple improperly raised the substantive issues in its motion, which the trial court correctly refused to consider, and, therefore, Common Pleas dismissed the motion as untimely filed. The order denying the *nunc pro tunc* motion was entered on the docket on February 23, 1996.

No further action was taken by Temple until March 28, 1996, when it filed a praecipe to enter judgment on the December 6, 1995 verdict. The Philadelphia Prothonotary entered judgment *pro forma* the same day. Temple then filed a Notice of Appeal from the entry of that judgment on March 29, 1996. Thereafter, on June 5, 1996, the trial court issued an opinion in support of its verdict.[3]

The City argues that it was improper for Temple to enter judgment before filing its notice of appeal and contends that Temple should have filed its appeal within thirty days of the February 23, 1996 order dismissing its *nunc pro tunc* motion for post-trial relief, or, in the alternative, if Temple believed that post-trial motions were unnecessary, it should have filed its notice of appeal within thirty days after the December 6, 1995 order dismissing the claim on the merits.

In support of the timeliness of its appeal, Temple argues that (1) because the Chancellor failed to comply with Pa. R.C.P. No.

---

**2.** Pa. R.A.P. 903(a) states that a party must file a notice of appeal to this Court "within 30 days after the entry of the order from which the appeal is taken."

**3.** An encapsulated time-line of the orders and filings in this case is as follows:
 12–6–95 Order/verdict
 12–16–95 Under Pa. R.C.P. 227.1(c)(2), last day to file post-trial motions (10 days)
 1–5–96 Under Pa. R.A.P. 903(a), last day to file notice of appeal with this Court (30 days)

 2–9–96 Temple's Motion Nunc Pro Tunc
 2–23–96 Order denying Motion Nunc Pro Tunc
 3–25–96 Last day to file appeal from 2–23–96 order (30 days)
 3–28–96 Praecipe for judgment on order of December 6, 1995
 3–28–96 Judgment entered on order of December 6, 1995
 3–29–96 Notice of Appeal filed
 6–5–96 Trial Court Opinion on Merits

1517(a), it was not required to file post-trial motions and, therefore, it did not have to file an appeal from the February 23, 1996 order dismissing its *nunc pro tunc* motion; and (2) the December 6, 1995 order dismissing Temple's claim on the merits was not appealable until the prothonotary entered it as a final judgment.

■ We have thoroughly reviewed the relevant case law and are persuaded that (1) Temple was excused from filing post-trial motions because of the trial court's failure to comply with Pa. R.C.P. No. 1517(a); but (2) Temple should have nevertheless filed an appeal with this Court within thirty days after the entry of the December 6, 1995 order.

In *Community Sports, Inc. v. Oakland Oaks*, 429 Pa. 412, 240 A.2d 491 (1968), the appellants filed a **timely** direct appeal from a decree which denied equitable relief. The chancellor's adjudication gave the impression of being a final order, as it completely failed to comply with Pa. R.C.P. No. 1517(a). The appellants did not file exceptions to the decree, nor was the decree entered, upon praecipe, as a final decree by the prothonotary. Our Supreme Court explained that ordinarily it would quash an appeal when no exceptions were filed below; however, the Court excused the appellants' failure because of the chancellor's erroneous decree. The failure of the chancellor to comply with Pa. R.C.P. No. 1517(a) rendered the adjudication a nullity. As such, the Court vacated the decree and remanded the case with instructions that the chancellor prepare a new adjudication in conformity with Pa. R.C.P. No. 1517(a). *See also In re Involuntary Termination of Parental Rights to B.M.D. and R.L.D.*, 487 Pa. 387, 409 A.2d 404 (1979) (a decree terminating parental rights was vacated and the case was remanded where no adjudication or decree nisi was entered as required by Pa. R.C.P. No. 1517).

Similarly, in *Commonwealth of Pennsylvania v. Derry Township*, 466 Pa. 31, 351 A.2d 606 (1976),[4] the Supreme Court held that, when a trial court's order "neither comports

with the requirements of Rule 1517 nor indicates on its face that it is a decree nisi," exceptions are not required to preserve a right of appeal. *Id.* at 41–42, 351 A.2d at 611. The Court stated, "[t]here is nothing on the face of the order which would indicate that it is anything other than a final order and, as such, the requirement of [Pa. R.C.P. No. 227.1, requiring post-trial motions, is] not applicable." *Id.* As a result, the Supreme Court did not quash the appeal, but remanded the case for an evidentiary hearing regarding the substantive issues on appeal. But again, as in *Community Sports* and *B.M.D.*, the appeals taken from the orders of Common Pleas, *were timely filed.*

On the other hand, in *Zottola v. Venturino*, 343 Pa.Superior Ct. 289, 494 A.2d 471 (1985), the appellants filed an *untimely* appeal from a decree in equity that awarded certain property in dispute to the appellees. In support of the timeliness of their appeal, appellants argued that because the chancellor failed to comply with Pa. R.C.P. No. 1517(a) in issuing his adjudication, and as no exceptions were therefore filed, the decree was a nullity and could be challenged at any time, and further argued that the Superior Court should vacate the adjudication and remand the case for the chancellor to issue a proper decree nisi. The Superior Court disagreed and quashed the appeal, concluding that, unlike *Community Sports* and *Derry Township*, the appellants in *Zottola* had *not* filed their notice of appeal within thirty days of the "final" decree/adjudication.

In the instant matter, it is clear that the Chancellor completely disregarded Pa. R.C.P. No. 1517(a). As a result, Temple was not required to file post-trial motions under Pa. R.C.P. No. 227.1. Contrary to Temple's position, however, we must conclude that, like all of the orders in the above cases, the verdict/finding in favor of the City that was entered on December 6, 1995, was, and was intended to be, a final order. Indeed, there was nothing on the face of that order which would indicate that it was anything other than a final order. Therefore, Temple erred

---

4. *Derry Township* involved a direct appeal to the Supreme Court from an order of this Court which affirmed an administrative order of the Department of Environmental Resources. *See* 42 Pa.C.S. § 723.

in reducing the December 6, 1995 order to judgment, on March 28, 1996, before filing its appeal.[5] *See Burrell Education Association v. Burrell School District,* 674 A.2d 348, 350 n. 4 (Pa.Cmwlth.1996) (stating that "the District could have foregone filing a post-trial motion and *directly appealed* to this Court from the order ... since nothing in the order indicated that it was not a final order; that is, no decree nisi was entered as required by Pa. R.C.P. No. 1517" (emphasis added)); *see also Trinity Lutheran Evangelical Church v. May,* 112 Pa.Cmwlth. 557, 537 A.2d 38 (1988).

Because the December 6, 1995 order was final, and in view of the fact that Temple did not file its notice of appeal until March 29, 1996, well after thirty days from the date of the order, we find that the Superior Court's persuasive decision in *Zottola* is most relevant to our determination of the City's motion to quash. Therefore, like the *Zottola* Court, we must agree with the City that this appeal was untimely filed.[6]

 Even though our determination to quash Temple's appeal would normally end our consideration of the appeal, we are nevertheless of the view that even if we did not quash the appeal, we would have to affirm the Chancellor's decision on the basis that Temple is simply not entitled to the relief which it has requested.[7]

In his findings, the Chancellor accurately stated that Temple sought to recover from the City payment for emergency room treatment rendered to indigent city residents who are not eligible for medical assistance benefits from the Pennsylvania Department of Public Welfare (DPW). The parties agree that, under DPW regulations, a *hospital* cannot prepare and file an application for medical assistance coverage for an individual who was treated only as an outpatient. As a result, Temple cannot receive payment from DPW for the treatment of such patients unless there exists previous coverage under medical assistance or the indigent patient himself applies for coverage after discharge.[8] Temple does not pursue patients after their release from the emergency room to have them fill out applications for medical assistance, although if it did, and the patient

---

**5.** The Official Note to Pa. R.A.P. 301 provides the following three examples of orders that *must* be reduced to judgment before an appeal is taken: (1) an order denying a motion for a new trial or judgment notwithstanding the verdict; (2) an order dismissing exceptions to a decision after a trial without a jury; and (3) an order dismissing exceptions to the decree nisi in an equity action. The type of order cited in each of these examples is entered by the lower court *after* its consideration, and disposition, of issues raised on the basis of a motion for post-trial relief. Before an appeal may be taken from such orders disposing of the issues raised by motions for post-trial relief, judgment must be entered. The order appealed from in this case was *not* one that disposed of issues that were raised in post-trial motions, but, rather, it was the final order dismissing Temple's claim on the merits.

**6.** Temple's motion, filed on February 9, 1996, to file *nunc pro tunc* a motion for post-trial relief, was properly denied by Common Pleas on February 23, 1996. That motion and order are completely irrelevant to the pertinent procedural facts upon which our decision is based. However, the logic of the City's argument in this respect is inescapable: if Temple was obliged under Pa. R.C.P. No. 227.1 to file a motion for post-trial relief within ten days of December 6, 1995, *because that order was not final,* Temple failed to comply; if, however, Temple believed the December 6, 1995 order *was a final order* and no

post-trial motions were required, it failed to file an appeal within thirty days as required by 42 Pa.C.S. § 5571(b) and Pa. R.A.P. 903(a). Either way, what Temple did was untimely. Filing a *nunc pro tunc* motion for post-trial relief is completely irrelevant to either consideration.

**7.** Our standard of review in equity matters is limited to determining whether or not the trial court committed an error of law or abused its discretion. The equity court's decision will stand where there is sufficient evidence to support the Chancellor's findings and the reasonable inferences and conclusions which may be derived therefrom. *Greenacres Apartments v. Bristol Township,* 85 Pa.Cmwlth. 572, 482 A.2d 1356 (1984).

**8.** 55 Pa.Code § 141.81(g)(1) provides that applications for medical assistance may be submitted after the treatment is rendered. It states the following:

(g) **Period when eligibility begins.** The eligibility period will begin in accordance with the following:
(1) Initial application. Eligibility for MA services will begin with the service provided during the 90–day period preceding the date of application for Medical Assistance, if the applicant was eligible for the service during that period.

completed the forms, Temple would receive reimbursement for the medical treatment provided.[9]

Temple argued before the Chancellor, and on appeal, that "[a] long statutory and decisional history in Pennsylvania imposes on local governmental bodies, including the City of Philadelphia, a duty to pay for medical care provided to indigent residents." (Appellant's Brief at 7.) In support of its argument, Temple cites several nineteenth century statutes and cases which involve the responsibility of local authorities to care for indigent persons living within their jurisdictions.

Temple then relies upon the County Institution District Law (District Law),[10] in arguing that the District Law incorporates all of the nineteenth century laws pertaining to the duties of a local government to the poor. Temple cites Section 201 of the District Law, which abolished the old township-based system of poor districts, and replaced them with county institution districts. It provides the following:

In every city of the first class, the offices of poor director and of poor auditor of each poor district created by local law or remaining in existence as a former borough or township poor district are hereby abolished.... Title to the real and personal property of each such district is hereby transferred to and vested in the city, and *its powers and obligations are hereby vested in and imposed on the city.*

62 P.S. § 2231 (emphasis added). Thus, Temple argues, this section of the District Law places upon the City the duty to pay for medical care of indigents.

The Chancellor rejected Temple's argument that (1) the nineteenth century statuto-

ry and jurisprudential history in Pennsylvania established an unconditional duty on the part of poor districts to pay health care providers for emergency treatment rendered to indigents; and (2) that the District Law imposes a duty on the City to reimburse health care providers for emergency room treatment of indigent residents.

Specifically, the Chancellor concluded that it "was never the procedure [in the nineteenth century] that a health care provider could simply render services and then submit a bill to the overseers of the poor." (Trial Court Opinion at 8.) Upon review of the relevant statutes and case law, we agree with the Chancellor that the "fiscal integrity" of the health care system in this Commonwealth was always taken into account in providing health care services to the indigent. It was never the policy of this Commonwealth that the health care provider could treat a patient and then simply submit the bill to the City.[11]

With regard to the District Law, the Chancellor explained that Section 401 states that the DPW shall set the standards of care to be provided by the local authorities. It states the following:

The local authorities shall have the power, and it shall be their duty with funds of the institution district or of the city, according to rules, regulations and standards *established by the State Department of Public Welfare-*

(a) To care for any dependent, having a settlement in the county or city, who is not otherwise cared for....

62 P.S. § 2301 (emphasis added). Because there are no regulations of the DPW that impose upon the City a duty to pay for

9. Temple claims that its cost to obtain the information from indigent patients needed to determine eligibility and obtain payment outweighs the amount that it would be reimbursed from DPW. (Reproduced Record (R.R.) at 61a.)

10. Act of June 24, 1937, P.L.2017, *as amended*, 62 P.S. §§ 2201–2365.

11. For example, the statutes cited by Temple, namely the Act of April 4, 1803, P.L. 662, No. 185 and the Act of June 13, 1836, P.L. 541, No. 168, provided that, before the cost for previously

rendered medical treatment was paid, the authorities of the poor district had to decide that the treatment was necessary. The latter statute conditioned the duty to provide payment on the application of the indigent person to the poor district for benefits. Likewise, the cases cited by Temple all condition payment upon the retroactive approval of the appropriate authorities of the poor district. *See Directors of House of Employment v. Murry*, 32 Pa. 178 (1858); *Directors of the Poor v. Worthington*, 38 Pa. 160 (1861); *Directors of the Poor v. Malany*, 64 Pa. 144 (1870).

emergency room treatment of indigent residents, the Chancellor reasonably concluded that the DPW no longer believes that the City has such a duty.

In fact, as the Chancellor correctly held, pursuant to the Public Welfare Code (Code),[12] it is the **Commonwealth's** duty, not the City's, to provide medical assistance to the poor. Section 403 of the Code states that "[t]he [DPW] shall establish rules, regulations and standards, consistent with the law, as to eligibility for assistance and as to its nature and extent." 62 P.S. 403(b).[13] The DPW has fulfilled this duty by promulgating regulations concerning eligibility for medical assistance. *See* 55 Pa.Code § 141.71, § 141.81.

·Under Section 208 of the Code, it is DPW which has the duty of paying for medical care for the indigent and it is DPW which determines who is and who is not eligible for assistance. It states the following, in relevant part:

> *This State* shall not, nor shall any political subdivision of this State, be committed to the support of persons who are not, *in the opinion of the department [of public welfare]*, entitled to public support by the laws of this State.

62 P.S. § 208 (emphasis added).

The Chancellor determined that because neither the Code nor the regulations issued by DPW impose upon any local government the duty to pay for emergency medical treatment, no such duty exists. We agree and believe that the Chancellor was justified in reaching this conclusion.

Accordingly, in the event that we did not quash Temple's appeal, we would have found no merit to Temple's contention that the City is obligated, pursuant to the statutory and jurisprudential history in Pennsylvania, to pay for emergency medical treatment of indigent residents.

Appeal quashed.

**12.** Act of June 13, 1967, P.L. 31, *as amended,* 62 P.S. § 101 *et seq.*

**13.** "Assistance" is defined in the Code as the providing of "money, services and payment for

---

## ORDER

NOW, July 14, 1997, the appeal in the above-captioned matter is hereby quashed.

*medical coverage* for needy persons who are residents of Pennsylvania, are in need of assistance and meet all conditions of eligibility." 62 P.S. § 402 (emphasis added).