NATIONAL LABOR RELATIONS
BOARD, Petitioner,

v.

TEAMSTERS, CHAUFFEURS, HELPERS
& TAXICAB DRIVERS, LOCAL NO.
327, Respondent,

and

W. L. Ellis, Additional Respondent
in Contempt.

No. 19947.

United States Court of Appeals,
Sixth Circuit.

Jan. 18, 1979.

Elliott Moore, Deputy Associate Gen. Counsel, Paul Elkind, James P. Hendricks, Howard Fine, National Labor Relations Board, Washington, D. C., John J. A. Reynolds, Jr., Director, Region 26, N. L. R. B., Memphis, Tenn., for petitioner.

Donald J. Vestal, White & Vestal, Edward White, Cecil D. Branstetter, Carroll D. Kilgore, Nashville, Tenn., for respondent.

Before LIVELY, Circuit Judge, and PHILLIPS and PECK, Senior Circuit Judges.

## ORDER

### CONTEMPT ADJUDICATION

This cause was heard upon the petition of the National Labor Relations Board to adjudge Teamsters, Chauffeurs, Helpers & Taxicab Drivers, Local No. 327 and W. L. Ellis, its president, in civil contempt for having failed and refused to comply with judgments of this Court issued on January 18, 1972, and November 18, 1974. Upon the Board's petition of December 9, 1976, and Respondents' answer, the Court referred this matter for hearing to the Honorable C. G. Neese, Judge of the United States District Court for the Eastern District of Tennessee, on January 20, 1977. The Master filed his report on June 28, 1977, in which he found that the Respondents committed 37 separate violations of the Court's decrees. That report is made a part hereof as Appendix A. Upon exceptions filed by the Respondents, briefs, and oral argument, we have decided to affirm the Master's report and assess the Union with a compliance fine of $37,000 for the 37 violations found, which is in accord with our order in the previous contempt case. In consideration thereof, it is hereby

ORDERED AND ADJUDGED that the Respondents Local 327 and W. L. Ellis, its president, are in civil contempt for disobeying the decree of January 18, 1972, and the earlier civil contempt adjudication of November 18, 1974.

IT IS FURTHER ORDERED that Local 327 shall pay to the National Labor Relations Board the sum of $37,000, which is hereby imposed as a compliance fine against Local 327 for the 37 violations of the November 18, 1974, contempt adjudication. Said fine shall constitute a judgment and be payable within 30 days from the date of this order, and it is

FURTHER ORDERED that Local 327, its officers, agents, and representatives and Ellis, individually shall purge themselves of such contempt by:

A. Fully complying with and obeying this Court's decree of January 18, 1972, and the earlier civil contempt adjudication of November 18, 1974, and not in any way, by action or inaction, committing, engaging in, inducing, encouraging, or condoning any violation of the said judgment or contempt adjudication;

B. Immediately duplicating at Local 327's expense and posting in conspicuous places at Local 327's business offices, including all places within its jurisdiction where notices to members are customarily posted, for a period of sixty (60) consecutive days, copies of the contempt adjudication

and of the attached Notice (see Appendix B) signed by an officer of Local 327 on behalf of Local 327 and by Ellis individually which states that Local 327 and Ellis have been adjudicated in civil contempt of this Court for violating and disobeying, and failing and refusing to comply with this Court's said decrees, and that Local 327 will undertake forthwith the action ordered in purgation, said notices, together with a copy of the contempt adjudication to be maintained in clearly legible condition throughout such posting period, and ensure that they are not altered, defaced or covered by any other material;

C.  Signing and mailing sufficient copies of said Notice to the Regional Director for the NLRB's Twenty-Sixth Region, for posting at the offices of Nicholstone and Kroger, if such be willing;

D.  Signing and mailing copies of said Notice, and of the adjudication, to all employers with whom the Union has a signed agreement; and signing and mailing copies of the Notice and of the adjudication to all members of the Union; and reading said Notice by an appropriate officer of the Union at a general meeting of the membership;

E.  Filing separate sworn statements with the Clerk of this Court and copies thereof with the Regional Director of the Twenty-Sixth Region of the National Labor Relations Board in writing within fifteen (15) days after the entry of the adjudication, and again upon termination of the posting period showing what steps have been taken by Local 327 and Ellis to comply with the Court's directions; and

F.  Paying to petitioner, as court costs, all costs, salaries, including attorney's salaries, and expenditures incurred in the investigation, preparation, presentation, and final disposition of this proceeding to adjudge Local 327 and Ellis in civil contempt.

In view of the Respondent's recalcitrance and in order to deter future violations and assure compliance with the provisions of this purgation order and the previous decrees, it is further ORDERED that upon a failure of Local 327's officers and agents to take the action and inaction herein provided, this Court shall impose a compliance fine of $5,000 for each and every violation and a further compliance fine of $2,500 per day for each and every day that such violation continues; and a compliance fine of $2,000 against Respondent Ellis and any other individual who with knowledge of this order acts in concert and participation with Local 327 or Ellis for each and every violation of the foregoing provisions and a further compliance fine of $1,000 per day against each and every individual for each day that such violation continues.

IT IS FURTHER ORDERED that upon the failure of the Union or Ellis to purge themselves of civil contempt, the Court will, upon application of the Board, cause a writ of body attachment to be issued for service upon the Union, Ellis, and any officer, agent, or representative responsible for such non-compliance, and shall take such further steps as the Court may deem appropriate to ensure compliance with the judgment of this order.

## APPENDIX A

### No. 19,947

### UNITED STATES COURT OF APPEALS FOR THE SIXTH CIRCUIT

NATIONAL LABOR RELATIONS BOARD,

Petitioner,

v.

TEAMSTERS, CHAUFFEURS, HELPERS AND TAXICAB DRIVERS, LOCAL UNION NO. 327, ETC., W. L. ELLIS,

Respondents.

### REPORT OF THE SPECIAL MASTER

May it please the Court:

Responsive to the Court's order of January 20, 1977 herein, the undersigned master took testimony and received evidence with

respect to the issues raised by the pleadings herein, as amended, in Nashville, Tennessee on March 21–23, 1977, inclusive. The master entertained and disposed of motions pursuant to the Federal Rules of Civil Procedure relating to discovery and the amendment and supplementation of the pleadings. The master engaged Ms. Gustava McC. Smith, a qualified reporter, who took and transcribed the testimony at such hearing, and directed the petitioner National Labor Relations Board to pay such reporter's charges in the first instance when duly billed therefor.

The master files herewith with the clerk of this Court such transcript of the proceedings and of the evidence; the original exhibits received; and this report, including his findings of fact and conclusions of law. A copy of such report is being served simultaneously by postal service upon counsel for the respective parties.

The master made the following

### FINDINGS OF FACT:

1. This Court ordered on January 18, 1972 the respondents Teamsters, Chauffeurs, Helpers and Taxicab Drivers, Local Union No. 327 (union) and the respondent Mr. W. L. Ellis, as an officer thereof, to, *inter alia*:

> \* \* \* cease and desist from restraining or coercing the employees \* \* of any \* \* \* employer within its [the union's] territorial jurisdiction \* \* \* by mass picketing or otherwise blocking ingress or egress of employees at said companies' premises, by causing or threatening to cause physical harm to employees, by causing or threatening to cause damage to the property of said companies or their employees; or in any other manner restraining or coercing said employees. \* \* \*

*National Labor Relations Board*, petitioner, v. *Teamsters, Chauffeurs, Helpers and Taxicab Drivers, Local Union No. 327*, respondent, no. 19,947, this Court.

2. This Court ordered on November 18, 1974 that the aforenamed respondents conduct themselves consistently in all respects with the aforementioned judgment of Janu-

ary 18, 1972 and, *inter alia*, not in any way, by action or inaction, to commit, engage in, induce, encourage, permit or condone any violation of the said judgment, and specified by reiteration that such respondents not engage in any of the actions as set forth in finding of fact no. 1, *supra*. *Idem.*

3. The orders of this Court, described in findings of fact nos. 1, 2, *supra*, were in force and had continued effectiveness at all subsequent dates alluded to in these findings.

4. The respondent union, through its co-respondent, and the respondent Mr. Ellis had knowledge at all pertinent times of the purport of the aforementioned orders.

5. The actions of the respondent Mr. Ellis and certain other individual members of the respondent union, found hereinafter in these findings of fact, occurred within the territorial jurisdiction of the respondent union, *viz.*, in territory encompassed and bounded by the Alabama-Tennessee line on the South, the (westernmost portion in Tennessee of) the Tennessee River on the West, the Kentucky-Tennessee line on the North, and the foot of Cumberland Mountain (west of Crossville, Tennessee) on the East, and upon or adjacent to the respective premises of an employer The Kroger Company (Kroger) or of an employer Nicholstone Book Bindery, Inc. (Nicholstone), with each of which such employers the respondent union was engaged at all pertinent times in economic disputes.

All dates hereinafter are in the calendar year 1976, except as included in findings of fact nos. 36 and 37.

6. The respondent Mr. Ellis threatened to cause damage to the property of Nicholstone on August 18, by throwing repeatedly a logging-chain toward electrical-power lines leading into its plant. Tr., pp. 188–190.

7. A member of the respondent union caused or threatened to cause damage to the property of a Nicholstone employee on August 19, by kicking the white Oldsmobile station wagon vehicle of Mr. Dale Nichols utilizing the entranceway to such employer's premises. Tr., pp. 157–158.

8. The respondent Mr. Ellis caused damage to the property of Mr. Paul Owen Martin, an employee of Nicholstone, by kicking the door of his automobile on August 20 at about 6:55 o'clock, p. m. Tr., pp. 139–141.

9. The respondent Mr. Ellis restrained and coerced Nicholstone employees, by scattering a large quantity of roofing nails across the vehicular entranceway to its premises on August 20. Tr., pp. 156–161.

10. The respondent Mr. Ellis caused damage to the property of Nicholstone employees, by kicking two automobiles belonging to them on August 20. Tr., pp. 155–156.

11. The respondent Mr. Ellis threatened to cause physical harm to employees of Nicholstone and to cause damage to the property of such employer on August 20, by propelling missiles onto said premises with a slingshot. Tr., p. 159.

12. Mr. Ralph Henry, a member of the respondent union, damaged the property of Mr. Robert F. Sanders, a Nicholstone employee, by throwing two rocks and striking the latter's truck on the afternoon of August 24. Tr., pp. 109–110.

13. The respondent Mr. Ellis restrained and coerced Nicholstone employees on August 25, by scattering nails taken from a bag across the entranceway to its premises. Tr., p. 157.

14. Ms. Gail Beshears, a member of the respondent union, damaged the property of Mr. Dale Nichols, an employee of Nicholstone, by throwing a rock which struck his automobile on August 25. Tr., pp. 263–264.

15. Messrs. Eddie Proctor and Harry Sullivan, members of the respondent union, caused damage to property of Nicholstone, by throwing rocks at about 4:15 o'clock, p. m. on August 26 which struck its truck. Tr., p. 94.

16. The respondent Mr. Ellis threatened to cause physical harm to employees of Nicholstone and to cause damage to the property of such employer on August 26, by propelling a missile with a slingshot in the direction of a guard-house on the Nicholstone premises occupied by its employees and then handing such weapon to another person. Tr., p. 159.

17. Messrs. James Brown, Mike Walters, John Pettus, David Woodard, James Haley and Roger Rotoni, all members of the respondent union, damaged property of Kroger, by throwing rocks at such employer's trucks at about 8:00 o'clock, a. m., August 30. Tr., pp. 84–87.

18. Mr. Mike Simpson, a member of the respondent union, caused physical harm to Mr. Ronnie Garrett, an employee of Nicholstone, by throwing a brick on August 30 and striking Mr. Garrett with it. Tr., p. 95.

19. Mr. Charlie Jones, a member of the respondent union, threatened to cause damage to the property of Nicholstone at about 8:00 o'clock on a day during the first or second week of September, by stating to the aforenamed Mr. Garrett that a Nicholstone truck would not be permitted to make any additional trips, and that the next time it made a trip striking members of the respondent union would " * * * burn it or blow it up. * * *" Tr., p. 96.

20. Ms. Jo Nell Kramer, a member of the respondent union, threatened to cause physical harm to Nicholstone employees, by throwing gravel at such employees during the economic dispute between Nicholstone and the respondent union. Tr., p. 415.

21. Mr. Larry Parsley, a member of the respondent union, coerced employees of Kroger, by openly noting in writing the information on motor vehicular license plates of automobiles of Kroger employees on the afternoon of August 31. Tr., pp. 87–88.

22 (a). The aforenamed Messrs. Parsley and Brown and Mr. Bill Redmon, also a member of the respondent union, threatened to cause physical harm to Kroger employees, by shouting to them on August 31 warnings against their returning to their employer's facility and promising they would " * * * get yours * * *" in such event. Tr., pp. 88–89.

(b). The aforenamed Mr. Brown also threatened to cause physical harm to Mr. Dennis Ross, manager of distribution for Kroger, by assuring him on August 31 that

the above-mentioned departing workers would not be returning to work the following day and stating to him, " * * * you're next on the list, Dennis. * * * " Tr., pp. 88–89.

23. The aforenamed Mr. Brown threatened to cause physical harm to Mr. Dennis Ross, an employee of Kroger, by saying to Mr. Ross on or about August 31 at about 5:30 o'clock, p. m., that, if he (Mr. Ross) returned to work for Kroger, he would be followed and would never come-back again (or words to that import). Stipulation of March 15, 1977.

24. Mr. Gerald Solomon, a member of the respondent union, threatened to cause physical harm to Mr. Stanley Schrotel, an employee of Kroger, by stating to him (Mr. Schrotel) at about 5:30 o'clock, p. m., August 31, that he might be killed. *Idem.*

25. The aforenamed Messrs. Brown and Solomon damaged or threatened damage to the respective properties of employees of Kroger, by throwing rocks at the automobiles of such employees as they were departing the Kroger premises between 4:00 and 6:00 o'clock, p. m., August 31. *Idem.*

26. The aforenamed Ms. Kramer caused or threatened to cause damage to the property of employees of Nicholstone, by throwing stones at motor vehicles of such employees at about 7:45 o'clock, a. m., August 31. Tr., p. 114.

27 (a). About a half-hour past midnight on September 2, the automobile of Ms. Betty Patterson, an employee of Nicholstone, was " * * * set-on fire * * * " at her home. Tr., pp. 218–219.

(b). A week afterward, Mr. Roger Smith, a member of the respondent union, at about 5:30 o'clock in the afternoon, blocked the egress from the Nicholstone premises and threatened to cause damage to the property of the aforenamed Ms. Patterson by stepping in front thereof declaring that another automobile of such employee would " * * * be burn[ed] * * * too. * * * " Tr., p. 216.

28. Ms. Mary Mobley, a member of the respondent union, caused or threatened to cause damage to the property of a prospective Nicholstone employee, by throwing a rock on September 9, which struck the motor vehicle of such person. Tr., p. 180.

29 (a). Ms. Cheryl Page applied to Nicholstone for employment during the aforementioned labor dispute soon after Labor Day. Three or four persons who were congregated near the entranceway to such premises shouted to her that she should not apply for work there, addressed her with a provocative epithet, threatened to " * * * mess-up * * * " her face and her white automotive van, and forewarned her not to commence working for Nicholstone. Tr., pp. 124–125.

(b). On the early morning of September 17, Ms. Page's vehicle was included in a lengthy line of traffic making ingress into the Nicholstone premises, such congestion requiring frequent stops by such vehicles. While the Page vehicle was thus stopped, Ms. Clara Coleman, a member of the respondent union, caused Ms. Page physical harm, by jerking-open the door of the aforementioned van, pulling Ms. Page therefrom, and striking her several times. Tr., pp. 115, 127, 133–135.

30. 10 otherwise unidentified members of the respondent union were engaged in picketing of the Nicholstone premises at about 6:50 o'clock, a. m., September 17 at a time when some 100 additional persons were congregated nearby. Some person(s) included in such groups caused or threatened to cause physical harm to Mr. Mark A. Pickering, a contract employee of Nicholstone, who was then and there engaged in filming motion pictures of the scene, by tackling him from the rear and throwing his body toward the ground. Tr., p. 135.

31. The aforenamed Mr. Henry threatened physical harm to the aforenamed Mr. Pickering on September 19, by stating to the latter: " * * * I'll stomp your a__ if I ever catch you in Donelson, Tennessee. * * * " Tr., pp. 135–136.

32. The aforenamed Mr. Proctor caused or threatened damage to the property of a Nicholstone employee at about 5:30 o'clock,

p. m. on September 21 or 22, by throwing a rock which struck the front end of the motor vehicle of such an employee, Mr. Jeff Stover. Tr., p. 223.

33 (a). The aforenamed Mr. Proctor restrained, coerced and threatened physical harm to Nicholstone employees on September 22, by following in a motor vehicle the motor vehicle of Mr. Michael S. Settle, a Nicholstone employee, causing the latter vehicle to be stopped, and advising Mr. Settle that they " * * * were tired of messing around, people are going to get hurt. * * " Tr., p. 224.

(b). On the evening of Thanksgiving, the aforenamed Mr. Settle's automobile was burned. Tr., p. 225.

(c). Damage was caused to the property of the aforenamed Mr. Settle on the evening of September 27 when an unidentified person spray-painted the word, SCAB, on and split the roof of his convertible-type automobile. Tr., p. 226.

34. Mr. Bobby Graham, a member of the respondent union, damaged the property of a Nicholstone employee, by throwing a bottle at about 3:45 o'clock, p. m., October 1 and striking the vehicle of such employee Ms. Nadine Napier. Tr., p. 119.

35. During the pendency of the labor dispute between the respondent union and Nicholstone, windows of a value of $2,500 were "shot out" with steel balls upon the latter's property, and it was damaged extensively on November 23 between 3:30 and 4:00 o'clock, a. m., by an explosion. Tr., p. 265.

36. Mr. Leo Sullivan, a member of the respondent union, and two other persons on January 19, 1977 blocked with another vehicle the truck of Mr. James H. Corley, Jr, while he and two other employees of Nicholstone were undertaking to perform duties on a nearby public road, assigned them by their employer, and damaged or threatened to damage the property of Mr. Corley, by striking his camper with a picket-sign. Tr., pp. 232–234.

37. The aforenamed Ms. Coleman was engaged frequently in picketing of the Nicholstone premises in 1977 and blocked the ingress of an employee of Nicholstone to its premises, by leaping atop the hood of the motor vehicle of Mr. Jimmy Glennon, such an employee on February 7, 1977. Tr., pp. 266–268.

38. The respondent Mr. Ellis, chief administrative officer of his correspondent union, advised " * * * everyone who attended the meeting on August 28 at Kroger * * before the picket was setup, * * * there must be no violence, and it had to be peaceful. * * * " Tr., p. 22.

39. After hearing that violence had occurred in his absence on the scene of the Kroger picketing activities, the respondent Mr. Ellis contacted the six members of the negotiating committee of the respondent union and instructed them on August 31 to advise those picketing there " * * * there could be no violence." Tr., pp. 24–25.

40. The aforenamed respondent Mr. Ellis advised 150/160 members of his correspondent union on August 14 that " * * * there could be no violence * * * " on the picket-line to be established at or near the premises of Nicholstone. Tr., p. 40.

41. The aforenamed respondent Mr. Ellis threatened 125/150 members of his correspondent union on September 7 that he would " * * * 'pull' the picket [-line] * * * if there was any violence * * " on the picket-line at or near the premises of Nicholstone, stating: " * * * You people will have to stop throwing things or we will 'pull' the picket. * * * " Tr., pp. 44–45.

42. The aforenamed respondent Mr. Ellis saw a bottle thrown from a crowd assembled near the Kroger premises between August 18 and September 27 and admonished those assembled: " * * * That will get you nowhere. * * * " Tr., p. 49.

43. At the place and during the period mentioned immediately hereinabove, the aforenamed respondent Mr. Ellis saw glass broken, nails scattered and other acts of violence by members of the respondent union two or three times and reacted by advising union-members then engaged in picketing that such was " * * * useless and

silly. * * * " He assisted the attorney for Nicholstone in sweeping-up nails which had been scattered thusly on one occasion. Tr., pp. 49–50.

44. At no time during the labor-management disputes between the respondent union and Kroger and Nicholstone, respectively, did the respondent Mr. Ellis make an effective effort to determine which members of the respondent union were violating the orders of this Court. Tr., pp. 51–53.

45. The aforenamed Mr. Ellis gave instructions to those assembled at a meeting of the respondent union on August 25 that violence on the picket-line at the premises of Nicholstone premises must be stopped, or the offenders " * * * would have to be removed from the picket-line." He advised the aforenamed Ms. Coleman that " * * * it would be best for the union, her, and everyone involved if she didn't come back to the picket-line," and she withdrew therefrom voluntarily. Other than this, Mr. Ellis removed no member of the respondent union from the picket-line and requested no other member not to participate in picketing activities. Tr., pp. 58–65.

46. The respondents, each, violated contemptuously the orders of January 18, 1972 and November 18, 1974 of this Court herein.

(a) The violations by the respondent Mr. Ellis consisted both of:

(1) violations thereof by his personal actions, and,

(2) standing passive in the face of flagrant conduct by members of his corespondent union without taking effective affirmative action to repudiate this misconduct, which lack of effective action amounted to an acquiescence in the activities and objectives of the members of the corespondent union.

(b) The violations by the respondent union consisted of its standing passive in the face of flagrant conduct by many of its striking members with no affirmative action having been taken by the respondent union to repudiate this misconduct, which course of passivity and inaction amounted to silent approbation and an acquiescence in the activities and objectives of such of its members as were violating this Court's orders.

The master arrived at the following

## CONCLUSIONS OF LAW:

■ A. The respondents were bound by the aforementioned injunctive orders of this Court and obliged to obey the commands thereof. *New Jersey v. New York City* (1935), 296 U.S. 259, 260–261, 56 S.Ct. 188, 80 L.Ed. 214, 214–215.

■ B. (1) Disobedience of the aforementioned orders of this Court by the respective respondents was required to have been shown by clear and convincing evidence. *Oriel v. Russell* (1929), 278 U.S. 358, 364, 49 S.Ct. 173, 73 L.Ed. 419; *N. L. R. B. v. Local 5881, United Mine Workers of America*, C.A.6th (1963), 323 F.2d 853, 854.

(2) " * * * Clear and convincing evidence * * * " required the petitioner to " * * * come forward with 'more than a bare preponderance of the evidence to prevail.' * * * " *United Mine Workers v. Gibbs* (1966), 383 U.S. 715, 737[15], 86 S.Ct. 1130, 1145, 16 L.Ed.2d 218.

■ C. (1) Only ordinary evidence was required to establish the agency for the union of the aforenamed individual members of the respondent union in taking the disobedient actions they were found to have taken. *Cf.* 29 U.S.C. § 152 (13); House Conference Report No. 150 on H.R. 3020, 80th Congress, 1st Session, 36 (1947).

■ (2) Participation by knowing tolerance in such actions by the respondent union constituted a sufficient showing of agency. *United Mine Workers v. Gibbs, supra*, 383 U.S. at 739 [17], 86 S.Ct. 1130.

■ (3) The lack of effective action by the respondent union, in the face of the flagrant conduct by its individual members, to repudiate that misconduct amounted to silent approbation and acquiescence in such activities and the objective of its offending members. *National Labor Relations Board v. Bulletin Company*, C.A.3d (1971), 443 F.2d 863, 867; see also *Squillacote v. Local*

*248, Meat & Allied Food Wkrs.*, C.A.7th (1976), 534 F.2d 735, 748 [17].

■ (4) The oral admonishments of union-members by a union officer, before and during the strife, without the taking of effective affirmative action to enforce those admonitions, were insufficient to absolve the respondent union of responsibility for disobeying the orders of this Court. *Laborers' Int'l. Union, Local 245* (1975), 219 N.L.R.B. 142, 147, n. 9, affirmed C.A.4th (1976), 91 L.R.R.M. 2559.

■ (5) The tacit approval of acts of violence by its members during the pertinent labor disputes renders the respondent union responsible for the violative conduct of those members under the leadership of its correspondence Mr. Ellis, *White Oak Coal Company v. United Mine Workers*, C.A.6th (1963), 318 F.2d 591, 598 [4], although neither the respondents union nor Mr. Ellis was shown to have actually authorized those specific actions of such members, *ibid.*, 318 F.2d at 508 [3].

D. (1) " * * * An affirmative proposition is little supported by negative observations. * * * " *Brock v. United States*, C.A.5th (1967), 387 F.2d 254, 258, fn. 11.

■ (2) The negative testimony of the respondent Mr. Ellis, relating to the affirmative propositions advanced against him by witnesses for the petitioner, required the master, with the opportunity to observe and accredit the witnesses, to accord greater weight and probative value to such positive and affirmative evidence over such negative evidence. *Wallin v. Greyhound Corporation*, C.A.6th (1965), 341 F.2d 521, 523 [3].

■ E. (1) The respondents' disobedience of the orders of this Court was contemptuous thereof. *Garrigan v. United States*, C.C.A.7th (1908), 163 F. 16, 20 (relating to a charge of criminal contempt for violating a labor injunction), certiorari denied (1909), 214 U.S. 514, 29 S.Ct. 696, 53 L.Ed. 1063.

■ (2) Whether the actions of the respondent Mr. Ellis were wilful is irrelevant in determining whether the respondents are in civil contempt of the orders of this Court. *N. L. R. B. v. United Mine Workers of America*, C.A.6th (1968), 393 F.2d 265, 267, certiorari denied (1968), 393 U.S. 841, 89 S.Ct. 123, 21 L.Ed.2d 113, approving and confirming, *inter alia*, recommended conclusion of law (e) in the report of the special master.

(3) " * * * [W]hen the punishment is wholly remedial, serves only the purposes of the complainant, and is not intended as a deterrent to offenses against the public, * * * " it is properly a punishment for civil contempt. *McCrone v. United States* (1939), 307 U.S. 61, 64, 59 S.Ct. 685, 686, 83 L.Ed. 1108.

I hereby CERTIFY that I caused to be placed with the Postal Service on the hereinafter stated date respective copies of this report, addressed to Paul Elkind, Esq., assistant general counsel, National Labor Relations Board, 1717 Pennsylvania Avenue, Northwest, Washington, D. C. 20570 and to Cecil D. Branstetter, Esq., 200 Church Street, Fourth Floor, Nashville, Tennessee 37201, respectively.

I waive any compensation for my services and incurred no unreimbursed expenses in connection therewith. Having complied fully with the Court's order of January 20, 1977, I hereby request to be discharged as special master herein.

Respectfully submitted,

/s/C. G. Neese
(C. G. Neese)
Special Master

June 28, 1977.

930

FORM NLRB-5003
(7-77)

APPENDIX B

# NOTICE TO MEMBERS

## POSTED PURSUANT TO AN ORDER OF THE UNITED STATES COURT OF APPEALS
### HOLDING THE UNDERSIGNED IN CONTEMPT

WE HEREBY NOTIFY ALL OUR MEMBERS THAT PURSUANT TO A JUDGMENT OF THE COURT OF APPEALS, Teamsters Local 327 and W. L. Ellis, its president have been found in CIVIL CONTEMPT for engaging in unlawful restraint and coercion of employees of the Nicholstone Book Bindery, Inc. and the Kroger Company warehouse, both in Nashville, Tennessee.  The Court has further found Local 327 and Ellis in contempt for vandalizing vehicles of Employees of both companies; blocking ingress and egress from both establishments; committing acts of violence upon and threatening with violence employees, supervisors, and prospective employees of both employers; and causing damage to the property of both companies.

PLEASE TAKE NOTICE that the Court has imposed a fine of $37,000 against Local 327 for engaging in such unlawful conduct in violation of a prior contempt order issued by the Court.

PLEASE TAKE FURTHER NOTICE that, in accordance with this latest contempt judgment, a copy of which is posted alongside, we hereby notify you as follows:

WE WILL NOT restrain or coerce the employees of Nicholstone or Kroger, or the employees of any other employer within our territorial jurisdiction, as defined in the Court's judgment of January 18, 1972, in the exercise of rights guaranteed them in Section 7 of the National Labor Relations Act, by mass picketing, by blocking ingress or egress to the premises of any employer, by causing or threatening to cause physical harm to employees, by causing or threatening to cause damage to property of any employer or their employees; or in any other manner restraining or coercing said employees.

We sincerely ADVISE you that we intend to abide by the foregoing under-taking and we WILL NOT by action or inaction  encourage, permit, or condone any violation by anyone of the above undertaking.

We have been directed by the Court to post this Notice and copy of the contempt adjudication and to circulate it among all the membership by mail and by reading, and we intend in good faith to do this.

Finally, we call to your attention the fact that the Court has increased the compliance fines against the Union and has imposed a prospective compliance fine against Ellis and against anyone who acts in concert and participation with any of them  in violating the Court's judgment and that the Court has reserved jurisdiction to issue writs of body attachment against any person responsible for the future disobedience of its orders.

> Local 327, International Brotherhood of Teamsters, Chauffeurs, Warehousemen, and Helpers of America

DATED:               By: _____
                                                 , Title

_____
W. L. Ellis, Individually

---

### THIS IS AN OFFICIAL NOTICE AND MUST NOT BE DEFACED BY ANYONE

THIS NOTICE MUST REMAIN POSTED FOR 60 CONSECUTIVE DAYS FROM THE DATE OF POSTING AND MUST NOT BE ALTERED, DEFACED, OR COVERED BY ANY OTHER MATERIAL.  ANY QUESTIONS CONCERNING THIS NOTICE OR COMPLIANCE WITH ITS PROVISIONS MAY BE DIRECTED TO THE BOARD'S OFFICE, Mid-Memphis Tower - 8th Floor, 1407 Union Avenue, P.O. Box 4085 Crosstown Station, Memphis, Tennessee 38104, (901) 521-2725.