487 A.2d 1327

SCHNABEL ASSOCIATES, INC.

v.

The BUILDING AND CONSTRUCTION TRADES COUNCIL OF PHILADELPHIA AND VICINITY, AFL–CIO, Appellant.

Superior Court of Pennsylvania.

Argued May 1, 1984.

Filed Jan. 4, 1985.

Reargument Denied March 13, 1985.

378

Richard B. Sigmond, Philadelphia, for appellant.

Lawrence S. Coburn, Philadelphia, for appellee.

Before SPAETH, President Judge, and BROSKY and HOFFMAN, JJ.

HOFFMAN, Judge:

This is an appeal from an order holding appellant in civil contempt and imposing fines. Appellant challenges the propriety of the proceedings below, the sufficiency of the evidence supporting the finding of contempt, and the assessment of the fines. We affirm in part and vacate in part.

In November of 1981, appellee, a construction company, began developing the Bethesda House project in Upper

Chichester Township, Delaware County. Disputes over wage and employment benefit policies caused appellant, a labor organization comprised of building and construction unions in the Philadelphia area, to establish a picket line at appellee's construction site. On November 12, 1981, appellee filed a complaint against appellant seeking to enjoin the illegal mass picketing and misconduct and to limit the number of pickets. On December 3, 1981, the lower court entered an order (1) enjoining appellant, or any of its agents, employees and representatives, from interfering with appellee's job site by obstructing ingress or egress, mass picketing, violence or intimidation; and (2) limiting the number of pickets to six, with each picket at least three feet apart and more than 50 yards from any entrance to the site.[1] Following the entry of that order, several of appellant's members committed acts of violence on the picket line. Consequently, on December 15, 1981, appellee filed petitions for attachment for civil contempt and for indirect criminal contempt. A series of evidentiary hearings were held on December 30, 1981, January 12, 1982, February 16–17, 1982, May 27, 1982 and June 24, 1982. Finally, on October 22, 1982, the lower court filed an Opinion containing findings of fact and conclusions of law and the following Order:

AND NOW, to wit, this 20th day of October A.D. 1982, after hearing testimony and reviewing Briefs by respective counsel, the following is ORDERED and DECREED:

1. The Council [appellant] is found to be in civil contempt of the Court's Order of December 3, 1981 as amended;

2. Clarence Ridle is found to be in civil contempt of the Court's Order of December 3, 1981, as amended;

3. Edward McClintock is found to be in civil contempt of the Order of December 3, 1981 as amended;

4. David Lyons is found to be in civil contempt of the Court's Order of December 3, 1981 as amended;

1. This order was later amended to limit the number of pickets to four, with each picket at least eight feet apart.

5. Jack Scott is found to be in civil contempt of the Court's Order of December 3, 1981 as amended;

6. John Garvey is found to be in civil contempt of our Order of December 3, 1981 as amended;

7. The Council [appellant] is ordered to pay a [prospective] fine of Twenty-five Thousand ($25,000.00) Dollars, returnable upon there being no further contemptuous acts at the Bethesda House job site.

8. The Council [appellant] is ordered to pay the attorneys' fees of the Plaintiff.

9. The Council [appellant] is further ordered to post a [bond] in the amount of Five Hundred Thousand ($500,-000.00) Dollars to compensate Plaintiff for any additional damages.

10. The Council [appellant] is ordered to pay two-thirds (⅔) of the Sheriff's bill incurred by the Plaintiff.

11. Individual Defendants Clarence Riddle, Edward McClintock, David Lyons, Jack Scott and John Garvey are fined the sum of One Hundred ($100.00) Dollars each and are further Ordered not to commit any further acts of contempt, under threat of being attached for indirect criminal contempt.[2]

On November 15, 1982, appellant filed the instant appeal.[3] On December 22, 1982, appellee filed a motion to quash the appeal because of appellant's failure to file timely exceptions. This Court, in a February 8, 1983 per curiam order, denied the motion without prejudice to the parties to raise the jurisdictional issue at argument.

■ The first issue we must resolve is whether the appeal should be quashed because of appellant's failure to file exceptions to the October 20, 1982 contempt order. Appellee argues that the order was a decree nisi and, therefore,

2. The original order used the terms "perspective" and "bail" rather than "prospective" and "bond". The amendments were requested by appellee in its November 12, 1982 petition for exceptions and were not objected to by appellant in its November 22, 1982 answer to the petition.

3. The five individuals named in the October 20, 1982 contempt order also filed appeals to this Court but later withdrew their appeals.

appellant was required to file timely exceptions pursuant to Pa.R.Civ.P. 1518. Appellant asserts that the order was final and required no exceptions. Under Pa.R.Civ.P. 1517(a),

> [t]he adjudication shall consist of (1) a statement of the issues; (2) a closely condensed chronological statement, in narrative form or in separate findings, of all the facts which are necessary to be known in order to determine the issues; (3) a discussion of the questions of law involved and the court's conclusions of law and (4) a decree nisi.

Pa.R.Civ.P. 1518 provides that exceptions may be filed by any party to the decree nisi within ten days after notice of the filing of the adjudication and that matters not covered by exceptions are deemed waived. Pa.R.Civ.P. 1519(a) provides that, if no exceptions are filed within the ten-day period, then the decree nisi is to be entered by the prothonotary on praecipe as the final decree.[4] *See Commonwealth v. Tolleson,* 462 Pa. 193, 340 A.2d 428 (1975) (failure to file exceptions resulted in order becoming final and waiver of issues on appeal). However, in *Commonwealth v. Derry Township, Westmoreland County,* 466 Pa. 31, 351 A.2d 606 (1976), our Supreme Court held that failure to file exceptions did not preclude raising arguments on appeal where the court's order contained no findings of fact, no conclusions of law, nor any language which would indicate that the order was anything other than a final order, or that the parties were required to file exceptions to perfect a right of appeal. The Court stated: "Where the court's order neither comports with the requirements of Rule 1517 nor indicates on its face that the order is a decree nisi, it should not be presumed that exceptions must be filed in order to preserve a right of appeal." *Id.,* 466 Pa. at 41, 351 A.2d at 611. *See also Patrick & Wilkins Co. v. Adams,* 456 Pa. 566, 322 A.2d 341 (1974) (parties were deprived of an opportunity to file exceptions where chancellor's adjudication included findings of fact, conclusions of law and a "final decree").

4. Pa.R.Civ.P. 1518 and 1519 have since been rescinded, effective January 1, 1984.

In the instant case, although the lower court opinion accompanying the contempt order included findings of fact and conclusions of law, the order itself did not indicate on its face that it was a decree nisi. On the contrary, the order appeared final. *See College Watercolor Group, Inc. v. William H. Newbauer, Inc.*, 468 Pa. 103, 360 A.2d 200 (1976) ("[A] contempt order is final and appealable when it is entered."); *Commonwealth v. Morrisey*, 150 Pa. Superior Ct. 202, 27 A.2d 446 (1942) (order committing for contempt is final and subject to review).[5] While it is true that appellee filed what it titled a "Petition by Schnabel Associates, Inc. For Exceptions" pursuant to Pa.R.Civ.P. 1518, this petition only sought to make certain technical amendments to the October 20, 1982 Opinion and Order, namely, substituting the terms "prospective" and "bond" for the terms "perspective" and "bail", respectively, in the Order, and changing a statement in the Opinion from "The following acts are alleged to have occurred on December 9, 1981:" to "The following acts occurred on December 9, 1981:". Appellant did not object to the requested amendments to the Order in its answer and later withdrew its objection to the amendment in the Opinion. The lower court then granted the petition. We find that the lower court's correcting these technical errors was more appropriately covered by Pa.R.A.P. 1701(b)(1), which provides that, after an appeal is taken, the trial court may "[t]ake such action as may be necessary to ... correct formal errors in papers relating to the matter[.]" Additionally, we note that appellee's petition was filed 21 days after the entry of the contempt order, far exceeding the ten-day limit set by Rule 1518 for filing exceptions. Further, upon the expiration of the ten-day period without either party filing exceptions within that

5. This Court is without jurisdiction to hear an appeal from an interlocutory order in a contempt case. *Cedar Valley Civic Association v. Schnabel*, 239 Pa.Superior Ct. 486, 362 A.2d 993 (1976). A contempt finding is interlocutory and nonappealable until sentence has been imposed. *In re Koll*, 311 Pa.Superior Ct. 570, 457 A.2d 570 (1983); *Hester v. Bagnato*, 292 Pa.Superior Ct. 322, 437 A.2d 66 (1981). Here, the contempt order included sanctions.

period, the Prothonotary did not, on praecipe, enter the order as a final decree pursuant to Rule 1519(a). Under these circumstances, we find it reasonable to conclude that neither the lower court nor the parties construed the contempt order as a decree nisi requiring exceptions. We also find that appellant received insufficient notice of the need to file exceptions so as to justify our quashing its appeal. Accordingly, we hold that the contempt order was final and appealable.

■ Appellant contends that the lower court (1) improperly commingled civil and indirect criminal contempt proceedings, thereby depriving appellant of constitutional due process rights, and (2) failed to comply with the mandatory procedural steps for civil contempt proceedings. "It is axiomatic that courts have always possessed the inherent power to enforce their orders and decrees by imposing sanctions for failure to comply with said orders." *Rouse Philadelphia Inc. v. Ad Hoc '78*, 274 Pa. Superior Ct. 54, 71, 417 A.2d 1248, 1257 (1979). "Contempt [of court] may be civil or criminal; criminal contempts are further divided into direct and indirect classifications." *Grubb v. Grubb*, 326 Pa. Superior Ct. 218, 222, 473 A.2d 1060, 1062 (1984). "Direct criminal contempt involves those contumacious acts committed in the presence of the court." *Rouse Philadelphia Inc. v. Ad Hoc '78, supra. See also Knaus v. Knaus*, 387 Pa. 370, 127 A.2d 669 (1956).

> The distinction between criminal contempt and ... civil contempt lies in the judicial response to the contumacious acts and the judicial responses are classified according to the dominant purpose of the court in issuing the order. If the dominant purpose of the court is to punish an offender for past contumacious acts in disobedience to a court directive then the contempt is criminal. If the purpose of the court is to coerce the contemnor to comply with the court directive then the contempt is civil contempt.

*Rouse Philadelphia Inc. v. Ad Hoc '78, supra.*

> ... The "[d]ominant purpose of coercion or punishment is expressed in the sanction imposed. A civil adjudication of

contempt coerces with a conditional or indeterminate sentence of which the contemnor may relieve himself by obeying the court's order, while a criminal adjudication of contempt punishes with a certain term of imprisonment or a fine which the contemnor is powerless to escape by compliance".... Where the contempt is civil in nature, "the court must impose conditions on the sentence so as to permit the contemnor to purge himself; he must be allowed to carry the keys to the jail in his pocket." ... "[A] contemnor who will be sentenced to a determinate term of imprisonment or a fixed fine, which he is powerless to escape by purging himself of his contempt, is entitled to the essential procedural safeguards that attend criminal proceedings generally." ...

*Grubb v. Grubb, supra,* 326 Pa.Superior Ct. at 222–223, 473 A.2d at 1062 (citations omitted).

The factors generally said to point to a civil contempt are these: (1) Where the complainant is a private person as opposed to the government or a governmental agency; (2) where the proceeding is entitled in the original injunction action and filed as a continuation thereof as opposed to a separate and independent action; (3) where holding the defendant in contempt affords relief to a private party; (4) where the relief requested is primarily for the benefit of the complainant; and (5) where the acts of contempt complained of are primarily civil in character and do not of themselves constitute crimes or conduct by the defendant so contumelious that the court is impelled to act on its own motion.

*Knaus v. Knaus, supra,* 387 Pa. at 378, 127 A.2d at 673.

 "[E]ven where the same facts might give rise to criminal as well as civil contempt, each has its own distinct procedures and confers distinct procedural rights; the two may not be casually commingled." *Barrett v. Barrett,* 470 Pa. 253, 260, 368 A.2d 616, 619 (1977). A direct criminal contempt proceeding is summary, involving arrest and imprisonment. *Altemose Construction Co. v. Building and Construction Trades Council of Philadelphia and Vicini-*

*ty et al.,* 449 Pa. 194, 220, 296 A.2d 504, 518 (1972). In an indirect criminal contempt proceeding, the defendant is entitled to the right to bail, the right to be notified of the accusations against him and reasonable time to prepare a defense, the assistance of counsel, and the right, upon demand, to a jury trial; he can only be found guilty if every element of the crime is proven beyond a reasonable doubt. 42 Pa.C.S.A. § 4135; *Altemose Construction Co. v. Building and Construction Trades Council of Philadelphia and Vicinity et al., supra,* 449 Pa. at 221, 296 A.2d at 519; *Knaus v. Knaus, supra,* 387 Pa. at 375, 127 A.2d at 671; *Cipolla v. Cipolla,* 264 Pa. Superior Ct. 53, 59, 398 A.2d 1053, 1056 (1979). In order to hold one in civil contempt, a five-step process must be followed: (1) a rule to show cause why an attachment should not issue, (2) an answer and hearing, (3) a rule absolute, (4) a hearing on the contempt citation, and (5) an adjudication. *Altemose Construction Co. v. Building and Construction Trades Council of Philadelphia and Vicinity, et al., supra,* 449 Pa. at 220–21, 296 A.2d at 518–519; *Commonwealth ex rel. Magaziner v. Magaziner,* 434 Pa. 1, 6, 253 A.2d 263, 266 (1969); *Village Gentry, Inc. v. West Village,* 316 Pa. Superior Ct. 404, 407, 463 A.2d 427, 428 (1983). Improper commingling occurred in *Philadelphia Marine Trade Association v. International Longshoremen's Association, Local Union No. 1291,* 392 Pa. 500, 140 A.2d 814 (1958). In that case, the lower court apparently held the defendants guilty of criminal contempt whereas the plaintiffs had requested civil contempt relief. In reversing the contempt orders, our Supreme Court held that the defendants were deprived of their procedural rights. The Court stated that, as civil contempt proceedings, the contempt orders were improper because they punished the defendants for past acts of misbehavior rather than setting forth conditions of compliance to which defendants were required to conform and conditioning its punitive measures on failure to comply therewith. The Court further stated that, even if the proceedings were viewed as indirect civil contempt, the defendants were not afforded trial by jury, which they had

timely demanded, and the penalties imposed were in excess of the permissible statutory limits. *Id.*, 392 Pa. at 513, 140 A.2d at 821. *See also Barrett v. Barrett, supra* (Because the civil contempt power is used to compel performance, not inflict punishment, "a court may not convert a coercive sentence into a punitive one by imposing conditions that the contemnor cannot perform and thereby purge himself of the contempt".).

■ Here, having reviewed the record, we find that appellant was afforded adequate procedural safeguards prior to the finding of civil contempt and that the lower court did not improperly commingle civil and criminal contempt proceedings. Appellee's two petitions for attachment sought the court to grant a rule to show cause why appellant (1) "should not be adjudged in civil contempt of court" and (2) "should not be attached and subsequently tried for indirect criminal contempt". The lower court granted these rules to show cause and appellant answered the petitions. Six hearings were then held over the course of several months before the court entered the final civil contempt order. It is clear that the procedures utilized by the lower court and the final order itself were consistent with the finding of civil contempt. The sanctions imposed were proper for civil contempt and reflected the lower court's dominant purpose, which was to coerce appellant's compliance with the December 3, 1981 preliminary injunction. Additionally, all the factors indicated civil contempt: the complainant (appellee) was a private entity rather than a governmental entity; the contempt proceeding was entitled in the original injunction action and filed as a continuation thereof; holding appellant in contempt afforded relief to a private party; and the contemptuous acts were primarily civil in character.

■ Although appellant correctly asserts that the lower court omitted two steps out of the five-step process mandated for civil contempt, namely, entering a rule absolute and holding a hearing on the contempt citation, we do not find that fact determinative. In *Rouse Philadelphia Inc. v. Ad Hoc '78, supra,* the defendant and a large group of demon-

strators massed at and around the entrances to a downtown shopping mall, shouting and urging a boycott of the businesses. Following a full hearing, the trial court entered an injunction order against picketing, handbilling, speechmaking, demonstrating, and boycotting. After the defendant and 37 others were arrested for violating the order, the court held a hearing at which the defendant was given the opportunity to address the court. The defendant again led a demonstration at the mall and was again arrested. After another hearing, he was found in civil contempt and committed for 90 days, conditioned upon his right to purge himself of the contempt by assuring the court that he would, in the future, comply with the court order, and fining him $5,000. On appeal, the defendant claimed a violation of his due process rights because he was not accorded the five-step procedure required by *Altemose Construction Co. v. Building and Construction Trades Council of Philadelphia and Vicinity et al., supra.* In rejecting this claim, this Court held that the *Altemose* procedure was inapplicable where the attachment and contempt proceedings were predicated upon the violation of an order, which was served on the contemnor and entered after a full hearing. We further stated:

> [E]ven if we were to hold that the *Altemose* multi-step procedure applied to this situation we would hold that appellant had been provided with the procedural safeguards guaranteed therein as the court below conducted three hearings at which appellant had the opportunity to be heard prior to holding appellant in contempt of court.

*Rouse Philadelphia Inc. v. Ad Hoc '78,* 274 Pa.Superior Ct. at 74, 417 A.2d at 1259. We concluded that "due process requires no more than notice of the violations alleged and opportunity for explanation and defense." *Id. See also Commonwealth v. Mayberry,* 459 Pa. 91, 327 A.2d 86 (1974) (contemnor should have reasonable notice of the specific charges against him and an opportunity to be heard in his own behalf before being sentenced for contempt); *Crislip v. Harshman,* 243 Pa.Superior Ct. 349, 365 A.2d 1260 (1976)

(five-step procedure for civil contempt substantially complied with where appellant was informed of the charge against him, given two hearings before official sanctions were imposed, and apprised of the means of purging himself of the contempt). The conclusion we draw from the above caselaw, therefore, is that the essential due process requisites for a finding of civil contempt are notice and an opportunity to be heard. In the instant case, those requisites were certainly satisfied by the extensive pleadings and the six hearings at which both parties had ample opportunity to present their cases.

 Having concluded that appellant was afforded sufficient procedural safeguards prior to the finding of contempt, we also determine that there was no improper commingling of civil and indirect criminal contempt proceedings because appellant was never tried or sentenced for criminal contempt. The prohibition against commingling seeks to prevent the imposing of criminal contempt penalties without affording criminal procedural rights or civil contempt sanctions without affording the required civil procedures.

> [T]he procedures appurtenant to [civil and criminal] contempt [proceedings] may [not] be so commingled *as to take from a party the rights to which it is by law entitled to enjoy or to give that party benefits to which it has no right.* The punishments in an indirect criminal contempt must be in strict accord with the applicable statutes of this Commonwealth and the coercive measures in a civil contempt must specify the conditions upon which compliance by the defendant will result in release therefrom.

*Philadelphia Marine Trade Association v. International Longshoremen's Association, Local Union No. 1291, supra,* 392 Pa. at 512, 140 A.2d at 821 (emphasis added). Here, appellant was found in civil contempt after being afforded proper civil procedures and ordered to pay appropriate civil sanctions. Contrary to appellant's claim, it would have been improper to apply the reasonable doubt standard of proof to the proceedings below, which were civil

in nature and culminated in the entry of a civil contempt order.[6] The lower court properly chose to follow civil procedures and impose the less serious, civil sanction. *See In re November, 1975 Special Investigating Grand Jury,* 475 Pa. 123, 379 A.2d 1313 (1977), *cert. denied, O'Brien v. Pennsylvania,* 436 U.S. 922, 98 S.Ct. 2274, 56 L.Ed.2d 765 (1978) (court should impose criminal contempt sanction only where civil contempt would be inadequate or inappropriate).

Our conclusion that the lower court distinguished between civil and criminal proceedings is further supported by the contempt order itself. In fining the individual defendants, the lower court ordered them "not to commit any further acts of contempt, *under threat of being attached for indirect criminal contempt."* (Emphasis added). This language makes it clear that the lower court did not improperly combine civil and criminal contempt procedures but conducted fair civil contempt proceedings. Therefore, we fail to see how appellant was prejudiced by the proceedings below.

▮▮▮▮▮▮▮ Appellant next contends that the evidence was insufficient to support the finding of civil contempt. Specifically, it argues that there was no evidence that appellant actually participated in, authorized or ratified the illegal acts by its officers or members. Initially, we must dispose of appellant's misapprehension that the standard of union liability set forth in § 106 of the Norris-LaGuardia Act, 29 U.S.C.A. §§ 101 *et seq.,* applies to the instant case. Section 106 provides that:

No officer or member of any association or organization, and no association or organization participating or interested in a labor dispute, shall be held responsible or

6. Appellant also contends that it was denied the right to jury trial and the right to assert its privilege against self-incrimination. These claims are patently meritless because the lower court did not conduct indirect criminal contempt proceedings nor enter a criminal contempt order; therefore, these criminal procedural rights never attached. Moreover, the privilege against self-incrimination is purely personal and cannot be utilized by or on behalf of any organization. *United States v. White,* 322 U.S. 694, 699, 64 S.Ct. 1248, 1251, 88 L.Ed. 1542 (1944).

liable *in any court of the United States* for the unlawful acts of individual officers, members, or agents, *except upon clear proof of actual participation in, or actual authorization of, such acts, or of ratification of such acts after actual knowledge thereof.*

29 U.S.C.A. § 106 (emphasis added). It has been held on both the federal and state court levels that the anti-injunction provisions of the Norris-LaGuardia Act apply only to federal courts, and not to state courts. *Ford v. Boeger,* 362 F.2d 999, 1005 (8th Cir.1966), *cert. denied,* 386 U.S. 914, 87 S.Ct. 857, 17 L.Ed.2d 787 (1967); *Shaw Electric Co. v. International Brotherhood of Electrical Workers, Local Union No. 98,* 418 Pa. 1, 8 n. 11, 208 A.2d 769, 773 n. 11 (1965). *Cf. United Mine Workers of America v. Gibbs,* 383 U.S. 715, 737, 86 S.Ct. 1130, 1144, 16 L.Ed.2d 218 (1966) (§ 106 applies to federal court hearings of state court claims arising out of labor disputes). Also, contrary to appellant's assertion, the Pennsylvania Labor Anti-Injunction Act, 43 Pa.S.A. §§ 206a *et seq.,* does not apply to the instant case by virtue of the violence exception contained in § 206d(d). Under this section, the Anti-Injunction Act will not apply in any case

Where in the course of a labor dispute as herein defined, an employe, or employes acting in concert, or a labor organization or the members, officers, agents, or representatives of a labor organization or anyone acting for such organization, seize, hold, damage, or destroy the plant, equipment, machinery, or other property of the employer with the intention of compelling the employer to accede to any demands, conditions, or terms of employment, or for collective bargaining....

43 Pa.S.A. § 206d(d). Our Supreme Court has held that pickets' blocking of entrances to an employer's plant constituted a seizure under § 206d(d). *Wilkes-Barre Independent Co. v. Newspaper Guild, Local 120, et al.,* 455 Pa. 287, 290, 314 A.2d 251, 253 (1974). *See also Altemose Construction Co. v. Building and Construction Trades Council of Philadelphia and Vicinity et al., supra* (based

on findings of violence, Pennsylvania Labor Anti-Injunction Act does not preempt jurisdiction of state court to enjoin violence and limit congregation because defendants' picketing was indistinguishable and inseparable from acts of violence).

Generally, state courts have the power to restrain violence, mass picketing and overt threats of violence in order to protect public order and safety, and prevent damage. *Capital Bakers v. Local Union No. 464*, 281 Pa.Superior Ct. 384, 387, 422 A.2d 521, 523 (1980). Although Pennsylvania courts have not established a clearcut measure of union liability for its members in the civil contempt context, we are guided by the standard set forth in *National Labor Relations Board v. Teamsters, Chauffeurs, Helpers & Taxicab Drivers, Local No. 327*, 592 F.2d 921 (6th Cir.1979). In that case, the circuit court upheld the Master's finding that the union was in civil contempt of prior orders prohibiting mass picketing, blocking entrances to the employer's business premises, and threatening harm to employees and property. The court ruled that (1) lack of effective action by the union, in the face of flagrant violations by union members, to repudiate the misconduct amounted to silent approbation and acquiescence in such activities, and (2) the union's tacit approval of the members' acts of violence during the labor disputes rendered the union responsible for its members' misconduct. *Id.* at 928–29. The federal courts have applied the clear and convincing standard of proof in civil contempt cases. *Id.* at 928; *Nelson Tool and Machine Co., Inc. v. Wonderland Originals, Ltd.*, 491 F.Supp. 268 (E.D.Pa.1980). *Cf. Schauffler for and on Behalf of NLRB v. Local 1291, International Longshoremen's Association*, 292 F.2d 182 (3d Cir.1961) (petitioner in civil contempt proceeding must overcome heavy burden of proof). Pennsylvania courts, however, have stated that in civil contempt proceedings, the burden is generally on the complaining party to prove noncompliance with the court order by a preponderance of the evidence. *Barrett v. Barrett, supra; In re Grand Jury, April Term,*

*1977, Wayne County,* 251 Pa.Superior Ct. 43, 379 A.2d 323 (1977). Here, the lower court made the following findings of fact:

C. Since November, 1981, the Council [appellant] has established and maintained a picket line at Bethesda House.

D. The Council's delegates were present at the picket line to monitor activity for the council. [sic]

E. That at all times one or more members of the council [sic] were present at the picket line.

F. The Court issued an Order on December 3, 1981, enjoining the Council from mass picketing and from committing acts of violence, intimidation or coercion; as well as blocking ingress and egress to Bethesda House.

G. The Council [appellant] had knowledge of the December 3, Order and the subsequent amendments thereto.

H. Council [appellant] knew or should have known that its pickets were committing acts of violence in defiance of the Court's Order.

I. The Council [appellant] took no action to stem the tide of these violent acts.

J. The pickets have committed numerous violations of our Order as described more fully above.

(Lower Court Opinion at 12–13). The acts of violence committed by the picketers occurred in December, 1981, and in January, March, April and May, 1982, and included the following: throwing rocks, explosive devices, chain saw, jack, glass bottles and firecrackers at trucks and security guards at appellee's construction site; blocking ingress and egress; slashing and stabbing tires of trucks attempting to enter the site; beating up a subcontractor and vandalizing his vehicle; firing marbles from a slingshot at appellee's employees; and shouting obscenities and threats at persons attempting to enter the job site and at security guards. (Lower Court Opinion at 6–10). These findings are supported by the record. The lower court apparently found both appellee's witnesses and videotapes, which showed

these acts of violence occurring, to be credible and reasonably concluded the following:

2. The Council [appellant] established and sanctioned a picket line at the Bethesda House job site.

3. The Council repeatedly violated the Court's Order by committing acts of violence more fully set forth above.

4. When a labor organization sanctions a picket line and has its delegates monitoring the line, it is responsible for the acts of its members when it fails to take affirmative steps to monitor and control the action of the pickets.

5. Where a labor organization, who has knowledge of acts of violence by its members and takes no steps to investigate and control these acts, they have ratified and sanctioned these acts.

(Lower Court Opinion at 13–14). Under these circumstances, we find that the evidence was more than sufficient to support the finding of civil contempt. Accordingly, we hold that the lower court did not abuse its discretion in sanctioning appellant. *See Bata v. Central-Penn National Bank of Philadelphia,* 433 Pa. 284, 249 A.2d 767 (1969) (great reliance must be placed upon the discretion of the trial judge in civil contempt proceedings); *East & West Coast Service Corp. v. Papahagis,* 344 Pa. 188, 25 A.2d 341 (1942) (each court is the exclusive judge of contempts committed against its process, and on appeal its action will be reversed only when a plain abuse of discretion appears); *In re Grand Jury, April Term, 1977, Wayne County, supra* (in considering appeal from contempt order, great reliance must be placed upon the discretion of the trial judge).

 Appellant contends finally that the lower court improperly assessed exorbitant fines and damages against it without first conducting a hearing to determine appellant's ability to pay or to explore other methods of securing compliance with the injunction. "Judicial sanctions in civil contempt proceedings may, in a proper case, be employed for either or both of two purposes: to coerce the defendant into compliance with the court's order, and to compensate the complainant for losses sustained." *Brocker v. Brocker,*

429 Pa. 513, 521, 241 A.2d 336, 339 (1968), *cert. denied,* 393 U.S. 1081, 89 S.Ct. 857, 21 L.Ed.2d 773 (1969) (emphasis omitted). In civil contempt proceedings, the court may not convert a coercive sentence into a punitive one by imposing conditions that a contemnor cannot perform and thereby purge himself of the contempt. *Commonwealth ex rel. Novack v. Novack,* 310 Pa.Superior Ct. 112, 456 A.2d 208 (1983). The court may impose an unconditional fine upon a contemnor in order to encourage future compliance for the benefit of the injured private party. *Rouse Philadelphia Inc. v. Ad Hoc '78, supra,* 274 Pa.Superior Ct. at 72–73, 417 A.2d at 1258–1259. A civil contempt penalty must state the condition which upon fulfillment will result in the release of the defendant or the remission of the fine. *Knaus v. Knaus,* 387 Pa. 370, 379, 127 A.2d 669, 673 (1956). Attorneys' fees and other disbursements necessitated by the civil contemnor's noncompliance may be recovered by the aggrieved party. *Thompson v. Johnson,* 410 F.Supp. 633 (E.D.Pa.1976), *aff'd mem.,* 556 F.2d 568 (3d Cir.1977) (reasonable attorneys' fees and compensation for damages); *Farber v. Rizzo,* 363 F.Supp. 386 (E.D.Pa.1973) (compensatory damages, including reasonable attorneys' fees and costs); *Bata v. Central-Penn National Bank of Philadelphia,* 448 Pa. 355, 293 A.2d 343 (1972), *cert. denied,* 409 U.S. 1108, 93 S.Ct. 910, 34 L.Ed.2d 689 (1973) (attorneys' fees and expenses); *Rouse Philadelphia Inc. v. Ad Hoc '78, supra* (overtime costs for police and sheriff's deputies). The court may also order the contemnor to post a bond to compensate the injured private party from further financial losses caused by damage to property and injury to persons as a result of picketing activities. *Capital Bakers, Inc. v. Local Union No. 464 of the Bakery and Confectionary Workers International Union (AFL–CIO) of America,* 281 Pa.Superior Ct. 384, 422 A.2d 521 (1980).

 Here, the lower court expressly found that appellee was forced to expend monies for overtime pay for the Sheriff of Delaware County to protect its property and to pay attorneys' fees in conjunction with the contempt action

(Lower Court Opinion at 13). Hence, appellant was ordered to pay compensatory damages to appellee for the attorneys' fees and sheriff's costs incurred as the result of appellant's contempt. Appellant was also ordered to pay a conditional fine of $25,000, remittable upon appellant's future compliance with the injunction order, and to post a bond of $500,000 to compensate appellee for any additional damages. These sanctions are proper elements of a civil contempt order because they are coercive and compensatory, and not punitive.

■■■ We find, however, that the record fails to reveal whether the lower court considered appellant's ability to pay in assessing the $25,000 remittable fine. "[I]n fixing the amount of a fine to be imposed ... as a means of securing future compliance, [the court must] consider the amount of defendant's financial resources and the consequent seriousness of the burden to the particular defendant." *United States v. United Mine Workers of America*, 330 U.S. 258, 304, 67 S.Ct. 677, 701, 91 L.Ed. 884 (1947); *see also Brocker v. Brocker*, 429 Pa. 513, 241 A.2d 336 (1968), *cert. denied*, 393 U.S. 1081, 89 S.Ct. 857, 21 L.Ed.2d 773 (1969). Because the civil contemnor must be able to purge itself of the contempt, we find it necessary to remand this case so that the lower court may hold a hearing to determine appellant's ability to pay the fine. If it appears on remand that appellant had already complied with the court's order or that the dispute between the parties had ended, then the lower court may determine that the issue is moot and reinstate the fine.

Accordingly, we vacate the order insofar as it requires appellant to pay the $25,000 fine and remand for proceedings consistent with this opinion; otherwise, we affirm the order.[7]

7. The sheriff's fees, attorney's fees and $500,000 bond were imposed as compensatory fines. Because the proper amount of compensatory fines is governed by the actual loss suffered by the petitioner and not by the respondent's ability to pay, *see United States v. United Mine Workers of America*, 330 U.S. 258, 304, 67 S.Ct. 677, 701, 91 L.Ed. 884 (1947), the lower court's failure to inquire into appellant's ability to

Affirmed in part; vacated and remanded in part. Jurisdiction is not retained.

SPEATH, President Judge, files a concurring and dissenting opinion.

SPAETH, President Judge, concurring and dissenting:

I am unable to join in the majority's conclusion that the trial court properly required appellant to post a bond of $500,000. I should therefore vacate that requirement and remand the case to the trial court for further proceedings.

Preliminarily, I note that while in most respects I agree with the majority's opinion, I should limit the majority's conclusion that the trial court came close enough to complying with the five-step procedure set forth in *Commonwealth ex rel. Magaziner v. Magaziner,* 434 Pa. 1, 253 A.2d 263 (1969), *see Rouse Philadelphia, Inc. v. Ad Hoc '78,* 274 Pa.Super. 54, 417 A.2d 1248 (1978), *cert. denied,* 449 U.S. 1004, 101 S.Ct. 545, 66 L.Ed.2d 301 (1980), to cases such as this one, in which the contempt proceedings involve the failure to comply with an injunction. I express no view on whether a court could properly omit any of the five steps in a different type of case.

With respect to whether the trial court properly required appellant to post a bond of $500,000: Appellant argues that the record does not support the imposition of a bond in that amount. I agree. Fines may be imposed in à civil contempt proceeding to compensate the petitioner for damages suffered due to the respondent's noncompliance with the court's order. *See United States v. United Mine Workers of America,* 330 U.S. 258, 304, 67 S.Ct. 677, 701, 91 L.Ed. 884 (1947). In this case the court imposed, as compensatory fines, sheriff's fees, attorney's fees, and a $500,000 bond. The proper amount of compensatory fines is governed by the actual loss suffered by the petitioner and not by the

pay did not invalidate a compensatory fine. Moreover, the record supports the court's conclusion that appellant's violation of the injunction caused appellee to incur sheriff's fees, attorney's fees and additional damages.

respondent's ability to pay. *Id.* at 304, 67 S.Ct. at 701. Therefore, the court's failure to inquire into appellant's ability to pay did not invalidate a compensatory fine. Moreover, the record supports the court's conclusion that appellant's violation of the injunction caused appellee to incur sheriff's fees and attorney's fees. The record also supports the court's conclusion that appellant's violation of the injunction caused appellee additional damages. The court therefore properly required appellant to post a bond to compensate appellee for any future damages. *See Capital Bakers, Inc. v. Local Union No. 464 of the Bakery and Confectionary Workers Int'l Union,* 281 Pa.Super. 384, 422 A.2d 521 (1980). However, the record does not support the conclusion that a bond in the amount of $500,000 was required in order to compensate appellee for future damages. The only evidence that appellees introduced regarding the amount of damages suffered related to the sheriff's fees incurred. While there was extensive evidence to support a conclusion that appellant's violations of the injunction caused additional damages to appellee, there was no evidence regarding the amount of those damages. Indeed, in its proposed orders appellee requested a bond of only $50,000 to compensate it for any future damages. I find no support in the record for imposition of a bond of $500,000.[1]

The trial court's order should be vacated in so far as it required appellant to post a bond of $500,000, and the case should be remanded for further proceedings.[2]

1. This is not to say that there must always be specific evidence as to the amount of actual damages in order to support the imposition of a bond. The trial court certainly may use its common sense in evaluating the evidence regarding the damage done, and impose a bond that reasonably corresponds to that evaluation. Here, however, while the damage done was extensive, nothing indicates that it approached the amount of the bond imposed, and the trial court did not explain why it imposed a bond in an amount ten times as large as that requested by appellee.

2. It may be that on remand the trial court would determine that this issue is now moot. The record before us does not reveal whether or not appellant has complied with the court's order. If it were to appear on remand that appellant had not yet posted the bond, but that the dispute between the parties had ended, then there would be no basis

for further proceedings. Similarly, further proceedings would not be warranted if it were to appear on remand that appellant had complied with the court's order and had already posted the bond. *Cf. Easton Theatres, Inc. v. Wells Fargo Land & Mortgage Co., Inc.,* 498 Pa. 557, 449 A.2d 1372 (1982) (appeal dismissed as moot where record revealed that appellant complied with injunction rather than seeking to have order stayed and not complying with injunction pending appeal).